GEORGE S. STEWARD v. NUTRENA FEED MILLS, INC.[1]

No. 28,945.

August 5, 1932.

Upon reargument, former opinion adhered to.

*Snyder, Gale & Richards,* for appellant.

*Frank E. Clinite* and *Ellsworth, Clinite, Anderson, Dills & Dahl,* for respondent.

[1]Reported in 244 N. W. 813.

WILSON, C. J.

Defendant appealed from an order denying its alternative motion non obstante or a new trial.

Plaintiff is experienced in the flour and feed business, living in Minneapolis. Defendant is engaged in the milling and feed business with headquarters in Kansas City. In the fall of 1930 it acquired a mill in Minneapolis, and negotiations resulted in the employment of plaintiff as its Minneapolis manager. The employment is admitted, but controversy has arisen as to the terms of the contract. The negotiations included a long distance telephone talk between Minneapolis and Kansas City on Monday night, October 27, 1930, and another one on October 29, 1930, in which plaintiff says it was definitely agreed that he was to be employed for a term of one year to begin about November 8, 1930. Defendant's president, who talked for defendant, denies that the oral agreement over the telephone was for a definite period, but states that it was for an indefinite period or at will.

It was stated in the telephone talk that the oral agreement was to be confirmed by letter. Two days later, on October 29, 1930, defendant's president wrote plaintiff a letter, in which among other things he said:

"This confirms my telephone conversation with you Monday night as well as this morning in which we have offered you and you accepted the position of General Manager and General Sales Manager of our Minneapolis plant as soon as we take it over, which will be around November 8.

"It is understood that the first year your salary will be $5,000 per year, payable in twelve monthly installments. Your future salary and any bonus you receive will be worked out depending upon the results you show.

"You asked about a contract but as I advised you, none of our department heads or executives work under any kind of contract. They are here today and only here so long as they make good and produce. However, I am sure that you will find that no contract is needed as long as your work is satisfactory, and unless we had con-

siderable faith in your ability to make good, we would not have purchased the Minneapolis plant at this time under these trying conditions, and we certainly would not have gone into the venture unless we considered a connection with you permanent in every respect and thought that we were going to be successful in making a substantial profit every year out of Minneapolis under your management. * * *"

On November 4, 1930, plaintiff answered the above letter and among other things stated:

"In regard to your letter of the 29th, I am pleased to confirm all particulars therein as satisfactory and this letter is written in acceptance of the arrangement and with my assurance of complete appreciation of this opportunity. * * *

"I have made arrangements to leave Saturday the 15th and will be in Kansas City Monday morning the 17th. * * *

"With kind regards and assuring you that the writer will invest his very best effort in making the advent of your Company in this Northwest territory a thorough success, I am," etc.

Plaintiff entered defendant's service on November 15, 1930. He was released on February 16, 1931. He prosecutes this action on the theory that he had a verbal contract for a year, and that defendant's letter was merely a memorandum sufficient to take the contract out of the statute of frauds, since it was not to be performed within one year.

The definite statements in defendant's letter, particularly in reference to defendant's refusal to make contracts with executives for a definite period of time, and plaintiff's letter, explicitly confirming all particulars therein, constitute the contract of the parties. It is the net result of all prior negotiations. These letters worked an integration of the verbal negotiations. In the eye of the law they constituted the contract between the parties. The consequences of these letters cannot be avoided by styling them, or one alone, as a mere memorandum. The purpose of confirming oral agreements by writing is to avoid misunderstandings, and all pre-

liminary negotiations are understood to have been waived, abandoned, and merged into the writing. These letters were deliberately written, and they import a legal obligation without any uncertainty as to the object or extent of the engagement; and the result is that it must be conclusively presumed that the whole engagement of the parties and the manner and extent of their undertaking was reduced to writing.

We construe the contract between these parties, as evidenced by the two letters, as being a contract of employment at will, terminable by either party at any time without cause.

The order is reversed with directions to enter judgment in favor of plaintiff for $125.66 with interest since February 16, 1931, plus the sum of $354.17 without interest.

### After Reargument.

On October 21, 1932, the following opinion was filed:

Wilson, C. J.

The question on reargument was whether defendant had shifted its position on appeal. The law is that one cannot try a case upon one theory and then shift his position in this court. 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 401.

Usually a plaintiff blazes the way in the trial of the case. The defendant attempts to meet what comes. But the defendant may, however, commit himself to a definite theory, from which he cannot shift upon appeal.

Plaintiff brought the action and tried the case upon the theory that he had an oral contract, confirmed by letter, for a definite period of time, viz. one year. Defendant denied this claim. It admitted employment, but claimed it was an employment at will—for an indefinite period. Defendant so pleaded in its answer and consistently so claimed throughout the trial.

Plaintiff had defendant's letter of October 29, 1930 (exhibit A) identified and put in evidence, claiming it to be a memorandum sufficient to take the alleged oral contract out of the operation of the statute of frauds. Upon cross-examination plaintiff was asked

if this letter was a correct expression of the oral understanding, and he asserted in folio 105 that "this letter came in and confirmed the employment for a year." This court has not so construed the letter; neither did defendant's counsel so construe it at the trial. This statement of the plaintiff while on the witness stand provoked other questions from defendant's counsel as to plaintiff's understanding of the language used in this and other letters. This cross-examination was proper to show, first, that the particular letter did not confirm "the employment for a year," and, secondly, to show, as pleaded in the answer, that there was no employment for a definite period of time, but that the employment was at will. It also tended to discredit the witness.

Plaintiff argues that defendant did not object to the reception of oral testimony on the ground that it violated the parol evidence rule. Such an objection was not in order for the simple reason that plaintiff was asserting an oral contract, not a written one. Defendant could not stop plaintiff from attempting to prove the alleged oral agreement. He did object to the oral testimony as substantive evidence and even amended the answer invoking the statute of frauds.

We are of the opinion that there has been no shifting of position by defendant. Defendant's conduct on the trial of the case was consistent with the claim that plaintiff had no contract for a definite period but that plaintiff was employed at will and that the letters evidenced the only agreement.

In Foltmer v. First M. E. Church, 127 Minn. 129, 148 N. W. 1077, the contract was ambiguous as to whether cathedral glass was included in the words "mill work"; but in the case before us there is no ambiguity.

Defendant's motion for a directed verdict was denied. It should have been granted for the reasons stated in our former opinion, to which we now adhere.