ROBERTSON LUMBER COMPANY v. STEPHEN FARMERS COOPERATIVE ELEVATOR COMPANY.

143 N. W. (2d) 622.

April 22, 1966—No. 39,601.

18

Robins, Davis & Lyons, Lawrence Zelle, Marvin S. Freedman, Stokes, Vaaler, Gillig & Warcup, and Robert Vaaler, for appellant.

Saetre, Myhre & Huddleson, for respondent.

OTIS, JUSTICE.

This is an action to foreclose a mechanics lien for work and material furnished in repairing a grain storage building. Defendant counterclaims for breach of warranty in the original construction. The trial court sitting without a jury awarded defendant damages. Plaintiff appeals from the judgment.

Defendant, referred to herein as the co-op, is an organization of farmers engaged in the business of buying, selling, and storing grain at Stephen, Minnesota. Early in 1959, the co-op decided to expand its storage facilities. To that end it consulted a number of contractors, including the plaintiff lumber company. One of the prospective bidders interested the co-op in a "pole-type" building as distinguished from a

conventional steel bin. Representatives of plaintiff and defendant visited such a building in Mayville, North Dakota. The contract was then let to plaintiff which supplied the material and subcontracted the construction to one Elmer Johnson of Warren, Minnesota. The building was completed in September 1959 and filled with 95,000 bushels of wheat.

On February 10, 1961, the building collapsed, giving rise to this litigation. The co-op promptly advised the lumber company that it would look to it for fulfillment of an express oral warranty of fitness which the co-op asserted was a part of the building contract. The lumber company denied the warranty. After some discussion concerning the retention of an engineer to establish the cause of the collapse, the manager of the co-op directed the lumber company to proceed with the repairs, without resolving the issue of responsibility for the expenses thus incurred. After completing the repairs, the lumber company presented the co-op a bill for $7,323.24 and ultimately filed a mechanics lien, which it here seeks to foreclose. Defendant's counterclaim is for cleaning the wheat, transportation, labor, machinery rental, and loss of rental and grain. It was awarded $5,311.23.

The trial court found, among other things:

"That on or about July 1, plaintiff expressly guaranteed or warranted that the building to be erected by it would safely store and hold 100,000 bushels of wheat for a period of one year or for the period of the first filling, whichever was later.

"That during the negotiations between plaintiff and defendant, the latter made known to the former the particular purpose for which said building was intended to be used, namely, the storage of 100,000 bushels of grain, and that defendant relied upon plaintiff's skill, judgment and experience as a builder to furnish a building reasonably fit for such purpose.

"That plaintiff undertook to and did furnish all plans and specifications required for the construction of said building.

\* \* \* \* \*

"That the failure and collapse of the walls of said building was due to or caused by inadequacies in materials furnished and used by plaintiff in

constructing said building and the plaintiff's failure to properly design the building to meet the stresses and strains certain to occur from its intended use.

\* \* \* \* \*

"That the grain storage building after being repaired by plaintiff was reasonably fit for the purpose of storing 75,000 bushels of wheat."

The following are the court's conclusions of law:

"That plaintiff was obligated to repair the grain storage building after its failure pursuant to the express warranty given by plaintiff's representatives and under the terms of an implied warranty that said building would be reasonably fit for the storage of 100,000 bushels of wheat.

"That defendant is entitled to a judgment of dismissal with prejudice on the plaintiff's claim and to a judgment in the sum of Five Thousand Three Hundred Eleven and 23/100 Dollars ($5,311.23) on defendant's counterclaim together with its costs and disbursements herein."

In an accompanying memorandum, the court stated that the various instruments which constituted the contract did not integrate or merge the entire understanding of the parties and that an oral warranty of fitness might therefore be proved. In granting judgment on the counterclaim, the court also relied on the Uniform Sales Act, Minn. St. 512.15(1), as authority for finding a breach of implied warranty.

On appeal, the lumber company asserts the trial court erred in (1) giving effect to the oral express warranty; (2) invoking the sales act to find a breach of implied warranty of fitness; and (3) failing to permit plaintiff recovery on its mechanics lien.

■ The principles which determine whether the entire understanding of the parties is integrated and merged into a writing or series of writings so as to bar under the parol evidence rule testimony of oral conditions are fully set forth in a number of Minnesota cases and need not be reviewed.[1] Suffice it to say that we do not here find the various instru-

---

[1] Steward v. Nutrena Feed Mills, Inc. 186 Minn. 606, 244 N. W. 813; Karger v. Wangerin, 230 Minn. 110, 114, 40 N. W. (2d) 846, 849; Lehman v. Stout, 261 Minn. 384, 389, 112 N. W. (2d) 640, 643.

ments to be incomplete.[2] As Mr. Justice Mitchell said in Thompson v. Libby, 34 Minn. 374, 377, 26 N. W. 1, 2:

"* * * But to allow a party to lay the foundation for such parol evidence by oral testimony that only part of the agreement was reduced to writing, and then prove by parol the part omitted, would be to work in a circle, and to permit the very evil which the rule was designed to prevent."

The test of completeness was stated thus in Bjornstad v. Northern States Power Co. 195 Minn. 439, 444, 263 N. W. 289, 291:[3]

"While the writing itself is the criterion, it is not necessary that its incompleteness should appear on its face from a mere inspection. The situation of the parties, the subject matter, and attendant circumstances may be shown in aid of construing the writing as to whether it is or is not complete."

The defendant co-op has been unable to call our attention to any omitted terms or conditions which extrinsically or intrinsically render the understanding incomplete, except with respect to the claimed warranty. We hold that under the circumstances of this case it was error to receive in evidence the testimony concerning an express warranty orally created.[4]

We do not agree that the contract is governed by the Uniform Sales Act but concur in the court's conclusion that there was an implied warranty of fitness for the purpose inherent in the building contract undertaken by the plaintiff lumber company.

Essentially, it is the position of the lumber company that the elements of implied fitness for the purpose are not present because, as they assert,

---

[2] Defendant's exhibits 2, 3, 4, and 22.

[3] See, also, Wheaton Roller-Mill Co. v. John T. Noye Mfg. Co. 66 Minn. 156, 160, 68 N. W. 854, 855; French v. Yale, 124 Minn. 63, 65, 144 N. W. 451, 452.

[4] Warranty contracts are not treated as collateral agreements for purposes of applying the parol evidence rule. Jones v. Alley, 17 Minn. 269 (292); Thompson v. Libby, 34 Minn. 374, 26 N. W. 1; McNaughton v. Wahl, 99 Minn. 92, 108 N. W. 467.

22

the co-op furnished the design and the lumber company merely constructed the building in the manner the co-op directed. McCree & Co. v. State, 253 Minn. 295, 311, 91 N. W. (2d) 713, 724; Glass v. Wiesner, 172 Kan. 133, 238 P. (2d) 712. However, we believe the record supports the finding of the court which rejects this contention. It is true that one of the other prospective bidders first proposed the pole-type storage facility and that the lumber company apparently had no previous experience in this type of construction. Indeed, it was necessary for them to join the co-op in examining the North Dakota building so designed. The court found, however, that beyond specifying the type of construction they desired the co-op relied entirely upon the lumber company for plans, specifications, suitability of material, and all of the structural details having to do with the actual construction.

In our opinion, it does not avail the lumber company to claim that the co-op insisted upon a building of greater height than the one they had examined in North Dakota. Specifying the type of building was the co-op's only participation, and it was left entirely to the lumber company to supply not only appropriate material but a building contractor to do the actual work. The co-op did, by the terms of its acceptance, approve the contractor proposed.

It is clear from the evidence that the building collapsed as a result of inadequate bracing and inappropriate materials. Cables which were ½ inch in diameter were substituted for cables ordered by the contractor. Turnbuckles and hooks to anchor cables were of insufficient strength and design and were pulled straight. The pressure of 95,000 bushels of wheat, weighing 60 pounds a bushel, exceeded the stresses for which the building was designed. As a result, even when reconstructed by the lumber company, the court found that the building was capable of safely holding only 75,000 bushels, although the space was sufficient to accommodate 100,000 bushels.

The record indicates that the deficiencies in construction did not result from defective material, but from the selection of inappropriate material and faulty design. This is unlike a case where flaws in material cause a building to be weak and defective as in Kitowski v. Thompson Yards, Inc. 150 Minn. 436, 438, 185 N. W. 504, 505. There, it was

the poor quality of cement which resulted in faulty construction, and we held that there was a breach of implied warranty of fitness which under the Uniform Sales Act gave rise to liability although suit had been brought on an express warranty.[5]

While no Minnesota case has squarely passed on the right to recover on an implied warranty in a construction contract of the kind before us, the question has been considered elsewhere. In Markman v. Hoefer, 252 Iowa 118, 123, 106 N. W. (2d) 59, 62, the Iowa court without elaboration held:

"In building and construction contracts, in the absence of an express agreement to the contrary, it is implied that the building will be erected in a reasonably good and workmanlike manner and will be reasonably fit for the intended purpose."

There the court held that an onion warehouse was improperly constructed. Two other cases are worthy of attention. The Washington court in Hoye v. Century Builders, 52 Wash. (2d) 830, 329 P. (2d) 474, traced the history of implied warranties from the common-law doctrine of "caveat emptor" governing *completed* buildings to the more recent concept that there may be an implied warranty of fitness for human habitation with respect to buildings under construction.[6] The California court has said that the doctrine of implied warranty of fitness for intended use both as to workmanship and materials applies to construction contracts, recognizing, however, that they are not governed by the terms of the Uniform Sales Act. Aced v. Hobbs-Sesack Plumbing Co. 55 Cal. (2d) 573, 582, 12 Cal. Rptr. 257, 262, 360 P. (2d) 897, 902.

In Minnesota we have consistently noted that the doctrine of implied warranty is to be liberally construed. Bekkevold v. Potts, 173 Minn. 87,

---

[5] See, also, Baumgartner v. Glesener, 171 Minn. 289, 214 N. W. 27.

[6] Jones v. Gatewood (Okla.) 381 P. (2d) 158; Vanderschrier v. Aaron, 103 Ohio App. 340, 140 N. E. (2d) 819. See, also, Dunham, *Vendor's Obligation as to Fitness of Land for a Particular Purpose*, 37 Minn. L. Rev. 108, 118; *Washington Case Law — 1958,* 34 Wash. L. Rev. 139, 171; Bearman, *Caveat Emptor in Sales of Realty — Recent Assaults Upon the Rule,* 14 Vanderbilt L. Rev. 541, 543; Note, 26 U. of Pittsburgh L. Rev. 862; Comment, 1 Calif. Western L. Rev. 115.

24

89, 216 N. W. 790, 791; Beck v. Spindler, 256 Minn. 543, 558, 99 N. W. (2d) 670, 680. This we believe to be an appropriate case for extending to construction contracts the doctrine of implied warranty of fitness for the purpose, under circumstances where (1) the contractor holds himself out, expressly or by implication, as competent to undertake the contract; and the owner (2) has no particular expertise in the kind of work contemplated; (3) furnishes no plans, design, specifications, details, or blueprints; and (4) tacitly or specifically indicates his reliance on the experience and skill of the contractor, after making known to him the specific purposes for which the building is intended.

Applying the criteria we have suggested, it is apparent that in the instant case neither the co-op nor the lumber company had any previous experience with pole-type construction. The co-op furnished the lumber company with no plans other than indicating the general type of building it desired, and the lumber company undertook the work with the knowledge that it was intended to store 100,000 bushels of wheat with a total weight of some 6,000,000 pounds. Under these circumstances the construction contract included an implied warranty of fitness for that purpose. The trial court was justified in so finding, and in determining that there was a breach of warranty for which the defendant co-op is entitled to damages in the amount awarded. To the extent the building was restored by the lumber company, it was proper to consider the damages mitigated. The judgment is affirmed.

Affirmed.