Lenhoff, J.
The Plaintiffs sought damages from the Defendant contractor following the construction of a house on their land. The Plaintiffs complaint alleged that the soil beneath the foundation was inadequate to support the construction; and, that the Defendant had a duty to ascertain the capacity of the soil before commencing the erection of the house. It was also alleged in said complaint that such duty was breached in violation of his contract, or by reason of his negligence; or by breach of an applicable implied warranty. The Plaintiffs further charged that the Defendant misled them by a misrepresentation to their damage, and also violations of Chapter 93A of the General Laws of *89 Massachusetts.
In substance, the Defendant denied the allegations of the Plaintiffs’ complaint, and stated that he had strictly complied with the contract he and the Plaintiffs had executed.
After hearing, the Trial Court found for the Defendant on all counts.
The reported evidence reveals that the Plaintiffs noticed cracking on the northwest portion of the house’s foundation, a horizontal crack the length of the basement floor and a wide vertical crack along the westerly foundation wall; the initial cracking being observed within one year of the date of the completion of construction.
Because the foregoing was the only evidence appearing in the Report, same is deemed inadequate. Hence, we are adding thereto evidence stated in the Trial Court’s findings to fill the existing void and thereby enable c. determination to be reached. Olofson v. Kilgallon, 362 Mass. 802, 804-805 (1973).
The additional evidence we consider is the following:
On September 11, 1976, the Plaintiffs contracted with the Defendant, a builder of more than 400 houses over a 25 year period, to construct on their land, a single story, split entry residence, measuring 26 feet by 48 feet, for the sum of $25,927.00, excluding exterior and interior painting and the water and sewer connections.
The land on which the house was to be erected contains 45,528 square feet, fronting the 219.13 feet on the north side of East Main Street in Westborough. The front portion of the lot is rectangular in shape to a depth of approximately 50 feet from the frontline and it is fairly level. It slopes down northerly about 35 feet to a sheer declivity of about 60 feet in depth. There is a like declivity on the lot’s easterly boundary with a small brook running through it.
The contract consisted of a two page agreement with a four page list of specifications including certain exclusions. Said agreement contained the following pertinent provisions:
V. The Owner shall furnish all surveys and percolation tests. The Building permit shall be secured and paid for by the Owner-.
VII. The Contractor shall repair any work that fails substantially to conform to the requirements of the contract and that appears during the progress of the work and shall remedy any defects due to faulty materials or workmanship which appears within a period of one year from the date of completion of the contract.
On October 1,1975, the Plaintiffs’ predecessor in title filed with the Board of Health an application for a permit to construct an individual sewage disposal system. In said application, the lot’s soil was described as “gravel fill — in place for 5 years.” Same also disclosed therein that two 60 inch deep test pits were dug and no ground water was encountered.
The Plaintiffs made a down payment to purchase the involved lot of land on April 21,1976 and they subsequently completed the purchase. They knew the land purchased was filled land, but they did not know the nature of the fill. They made no surveys or percolation tests.
The Plaintiff, Ronald H. Allen, applied for a building permit and submitted a plot plan showing the location of the house thereon. Said Plaintiff told the Defendant where to locate the house'to be erected. The Defendant told said Plaintiff that the lot was filled in, but the said Plaintiff wanted a 40 foot set back from the lot’s front line as was shown on his filed plot plan. On September 25,1976, the building permit was granted and the house was constructed as per plot plan’s location, facing south. Said building permit was obtained by the *90 Plaintiffs who, as per contract, applied therefor.
On November, 1976, the Plaintiff, Ronald H. Allen, and the son of the prior owner of the land, installed the sewage connection. With a backhoe, they caused to be dug a 3 foot wide trench from the foundation’s northwesterly corner to a point 10 feet westerly thereof, for the installation of a 1,000 gallon septic tank. As per Board of Health conditions, the trenches were to be of sufficient depth to allow for the removal of clay and the replacement thereof with gravel. A further trench was dug from the septic tank 60 to 60 feet southerly towards the front line, to two distribution blocks.
The Defendant completed the house in December, 1976. Due to the land’s contour, the rear foundatP -< wall at the northwest was exposed for a height of about 714 feet. From that point easterly, the exposed wall declined markedly. Near the rear wall’s easterly end, the foundation wall was exposed only for a few inches under two sliding glass doors. To avoid damage, the Defendant placed 18 to 24 inches of gravel against the more exposed portion of the rear foundation wall.
The Plaintiffs moved into their home on January 4 and 5 of 1977, and a Certificate of Occupancy was issued on January 21,1977. Said certificate was signed by the Town of Westborough officials and set forth that there was full compliance with local and state zoning, building and applicable codes.
The Plaintiffs, in accordance with the terms of their contract, made the last payment on March 17, 1977; and, they were aware that the Defendant’s one year warranty period expired on March 17, 1978.
In the fall of 1977, a minor crack in the low foundation wall under the front entrance was reported to the Defendant and necessary repairs were made.
The Plaintiffs also noticed a hairline crack near the center of the cellar floor running from the west wall in the direction of the east wall. This did not appear serious and was not reported by the Plaintiffs to the Defendant.
After March 17,1978, the cellar floor crack widened to one-eighth of an inch and interior doors were binding and were sanded. In the spring of 1979, the cellar floor crack widened in places to one-quarter of an inch. Also the crack heretofore mentioned appeared in the northwest corner of the cellar wall.
In July, 1980, the Plaintiffs installed timbers in the cellar supported byjacks. Other steps were taken to support the rear wall with bolts, heavy guy wires and lally columns employed. Also, in November, 1980, eight to ten feet of the rear foundation wall adjacent to the sliding glass doors was excavated and concrete was poured under the footings as thrust blocks with the hole back filled.
On April 4,1981, after a loud noise, the front door was wedged shut and a crack appeared in the west foundation wall from its top to the cellar floor. And, in July, 1981, a trench was dug in the rear, westerly foundation wall and the same procedure for about the same distance was followed as was the case in November, 1980. The 18 to 24 inches of gravel previously placed against the rear wall by the Defendant had disappeared and had not been replaced.
In September, 1981, the cellar floor was replaced from the rear wall to the crack. In late spring of 1982, the cellar floor crack reappeared; and, as of April, 1983, it widened. The west foundation in April, 1983, had a crack one inch wide on the inside narrowing to the outside; the footings on the easterly side of the sliding glass doors had dropped seven-eighths of an inch below the wall; and, the family room paneling inside the sliding doors is bowed.
An architect who also was an engineer, inspected the property on March 5, 1983 and he found severe settling of the rear foundation wall. He stated that *91 the settlings would continue. He noted that the front part of the foundation is on solid ground or boulders, but the rear is on- soft material. He opined that there would be greater damage from frost if two feet of gravel were removed from the foundation’s exterior wall.
A consulting engineer who had made three soil borings on February 1,1983, stated that the soil beneath the foundation was not adequate to support the house and the fill is settling.
The excavator of the cellar hole removed gravel, clay, pieces of asphalt and concrete. No fill or other material was brought to the site. The ground seemed solid to him at the bottom of the excavation and supported his 25 ton bulldozer used in the excavating process.
The individual who poured the footings and foundation found the soil at the bottom of the excavation to be good and hard gravel. He voiced his opinion that the cracks were caused by frost and by the digging of exterior trenches near the foundation wall thereby undermining the footings.
The Plaintiffs seasonably filed eighteen Requests for Rulings of Law. The Trial Court granted all, except requests numbered 5,6, 7,8,9,10,11,14,15,16 and 18. The Plaintiffs claim they are aggrieved by the Trial Court’s disposition of requests numbered 5 through 18. Requests 12, 13 and 17 that there was evidence to warrant a finding that the Defendant breached the contract, was negligent and committed an unfair and deceptive practice, were all allowed, but the Trial Court stated it did not so find. The allowance of the Plaintiffs’ requests 12, 13 and 17 by the Trial Court and its finding for the Defendant merely means that such findings allowed are permissible. If, however, the rulings constitute error, the findings of the Trial Court could cause such error to be harmless. Hoffman v. Chelsea, 315 Mass. 54, 56 (1943). Such grievance, therefore, is now set aside for the discussion hereinafter will reveal whether there was error.
Consequently, we shall only deal with the denied requests. However, as all the requests denied are based on or flow from the denial of Requests numbered 5 and 6, only these key requests are herein set forth:

Request No. 5

The defendant had a duty to ascertain whether the soil on the property could bear the weight of the construction of a house.

Request No. 6

The defendant breached his duty of care to the plaintiffs by constructing the home after failing to take adequate measures to determine whether the soil could carry the weight of the structure.
The Trial Court, after making its findings that are hereinbefore set forth, concluded, as follows:
I find that the house was completed by the defendant in accordance with the contract and in a workmanlike manner. I find that the defendant is not guilty of breach of contract nor of unfair or deceptive acts or practices. I find that the defects complained of were caused by instability of the soil, the effects of frost on the soil, and the trenching exterior to the rear wall. Evidence is lacking that the defendant had made any undertaking to provide information as to soil conditions. Craig v. Everett M. Brooks Co., 351 Mass. 497, 499 (1967). Under the Agreement, the plaintiffs were to furnish all surveys and percolation tests, but none were made. I find that the . defendant was not negligent. There was no evidence of misrepresentations by the defendant, either oral or by conduct.
*92 The Plaintiffs, in addition to the Trial Court’s disposition of their Requests for Rulings of Law, also claim they are aggrieved by the denial of their motion to amend and make additional findings; and, their motion for a new trial.
The mere reference to the Plaintiffs’ denied motions in the report is deemed insufficient to properly place the Trial Court’s actions regarding these motions, before this Appellate División. Dist./Mun. Cts. R. Civ. P., Rule 64(c)(2) mandates that a copy of the “pleading necessary for the understanding or decision of the questions shall be annexed to or incorporated in the draft report. Papers in the case may not be incorporated by reference except by permission of the appellate division”.
The neglect to cause the motions to be made part of the report is a critical deficiency; and, so far as these motions are concerned, there isn’t anything here for our consideration in respect thereto. By reason thereof, we direct our attention to the denial of Plaintiffs’ Requests for Rulings 5 and 6 hereabove set forth.
We are confronted with the question: did the Defendant contractor possess a duty to ascertain whether the soil of the Plaintiffs’ property could bear or carry the weight of the house to be constructed or did he take or fail to take adequate measures to determine same? The answer is decisive of these proceedings.
The Plaintiffs assert in their submitted brief that the doctrine of caveat emptor has been eroded to thereby place responsibility on a home builder who has the opportunity and ability during construction to detect potential problems and prevent harmful consequences. They point out that the purchase of a new home is not an every day occurence; and, in many instances is a family’s single-most important transaction of a lifetime. Further, that because few new home owners have building knowledge or experience, they can rightfully rely on a builder’s expertise. They declare that in the past twenty years, the caveat emptor doctrine has crumbled in thirty jurisdictions as applied to home sales, and these states recognize the existence of an implied warranty of fitness and habitability to such sales. The Plaintiffs urge that the facts of the instant action presents a case of first impression in Massachusetts with no case previously decided following the majority trend; nor, the Plaintiffs state, is there any case in this state to the contary.
Research of our decisions resulted in locating one decision concerning soil instability, but, it involves streets not constructed buildings. It is our opinion that the law of this Commonwealth is enunciated therein. We refer to Duncan v. Cordley, 199 Mass. 299 (1908), where a contractor had performed his contract “to fill” two streets of the owner’s tract of land to a certain level and finish them ten feet wide at the top; and, thereafter, the streets settled below the prescribed level. In upholding the contractor’s right to recover, the Supreme Judicial Court stated that the only question was whether the streets were completed according to the contract. At page 301, the Court said:
If one of the streets afterwards settled to the nature of the level on which it was built, or the action of the elements, the plaintiff was not responsible therefor, and was not bound to fill the street up again. If the street had settled during the process of construction, the plaintiff would have had to keep filling it in until he brought it up to the required level. But, after it was once completed, as the jury have found that it was, his obligations under his contract were ended.
In 13 Am. Jur. 2d § 27, at page 29, we find the following language:
In the absence of special provisions in the contract, the contractor’s *93 obligation is ended upon the completion of the structure in accordance with the terms of the contract.
By applying the law of Duncan v. Cordley, supra, the sole duty of the contractor would be to perform his agreement which had absent therefrom any special provisions therein regarding soil or sub-soil. It follows that there is no Trial Court error in denying the Plaintiffs’ Requests.
Notwithstanding our view of the present, decided law, we do acknowledge that there is a real likelihood and a great probability that our Supreme Judicial Court would, in these times, join the majority of jurisdictions to hold that the doctrine of implied warranty should be liberally construed as to the sale or construction of new homes. Such doctrine of implied warranty for this purpose would extend to construction contracts where, as stated in the case of Robertson Lumber Co. v. Stephan Farmers Coop El. Co., 274 Minn. 17, 143 N.W.2d 622, 626 (1966), we find the following verbiage listing the elements to establish such warranty:
(1) the contractor holds himself out, expressly or by implication, as competent to undertake the contract; and the owner (2) has no particular expertise in the kind of design, specifications, details or blueprints, (3) furnishes no plans, design, specifications, details or blueprints, and (4) tacitly or specifically indicates his reliance on the experience and skill of the contractor, after making known to him the specific purposes for which the building is intended.
In 73 A.L.R. 3d 1213, we find an analysis, on point, in the Annotation captioned “Duty of Contractor to Warn Owner of Defects In Subsurface Conditions”. In reviewing the foregoing and the cases included therein, we conclude that a contractor who knows or should know of a soil or subsoil defect or deficiency, can be found to be liable for ensuing damages, in the cited jurisdictions, for failing to disclose the condition to the buyer or owner.
In the case at bar, we have no facts present of a fraudulent concealment of the soil'a condition. In fact, the evidence reveals that the Defendant called to the Plantiffs’ attention that nis property was filled-in land. Such condition was directly disclosed by the Defendant to the Plaintiffs, or one of them, when the location of the house to be erected on the Plaintiffs’ land was decided. This was done when the location was fixed by the Plaintiffs at a set back point of 40 feet from the street line, the Plaintiffs then well knowing that their lot was rectangular in shape and level for about 50 feet back from the 219.13 foot front line with the land sloping down northerly about 35 feet to a sheer declivity of 60 feet in depth with a like declivity on the easterly boundary.
The disclosure by the defendant that the land was filled in placed the Plaintiffs on direct notice from said Defendant and gave rise to an opportunity for the Plaintiffs to inquire of the Defendant to interpret or further explain and elaborate on the significance of this revelation. Having failed to avail themselves of this opportunity tends to demonstrate, as does the contract verbiage as to “surveys”, that the Plaintiffs did not rely on any representation of the Defendant; and, reliance as an element of actionable fraud, is here wanting. Nei v. Burley, 388 Mass. 307, 311 (1983). Also, the lack of reliance, as indicated above, fails to fulfill item (4) as quoted above in Robertson Lumber Co. v. Stephan Farmers Coop. El. Co., supra, same being the fourth ingredient of the implied warranty requirements.
The Trial Court had the task of interpreting the contract of the parties. Same contains a provision therein that ali surveys and percolation tests were to be *94 furnished by the Plaintiffs. The Trial Court found that none were made. This finding of fact is conclusive if same is supported by the evidence. Piekos v. Bachand, 333 Mass. 211, 213 (1955).
The Plaintiffs have urged that we concur with its assertion that the Trial Court incorrectly interpreted the agreement relating to the word “surveys” used therein. They advance the contention that the ordinary meaning of the term “surveys” does not include soil analysis and tests. They state in their brief the definition of “survey” in Black’s Law Dictionary 1615 (Rev. 4th ed. 1968), as follows: “The process by which a parcel of land is measured,” also “a statement of the result of such survey, with the courses and distances and the quantity of the land.” The Plaintiffs further argue that if the term “survey” is not susceptible of simple definition, it (the Trial Court) should not interpret said term so as to take on the expanded meaning to include the sub-surface. Said Plaintiffs cite cases that where avague term is used in an agreement, it should be interpreted in a light least favorable to the drafter of the agreement; in this case, the Defendant. Said cited cases are Wood v. Roy Lapidus, Inc., 10 Mass. App. Ct. 761 (1980); Bowser v. Chalifoux, 334 Mass. 348 (1956).
It is recognized that in interpreting words employed in an agreement, a court takes into consideration the entire agreement. King Features Syndicate, Inc. v. Cape Cod Broadcasting Co., Inc., 317 Mass. 652, 654 (1945). We are also cognizant that a court in construing a written agreement gives effect to the intention of the parties thereto and considers all the pertintent facts within their knowledge so as to accord full force and effect to the end sought to be accomplished. Spaulding v. Morse, 322 Mass. 149, 152-153 (1947).
In the case of Howe’s Cave Lime and Cement Co. v. Howe’s Cave Ass’n., 34 N.Y.S. 848 (1895), the court held that the granting of power to enter property to make a survey does not limit same to the surface, but allows an underground survey.
In Words and Phrases, Permanent Edition, Vol. 40A at page 530, we find “Survey” defined, as follows:
‘To survey’ has several significations. It may mean to inspect, or take a view of, to view with attention; to view with a scrutinizing eye; to examine with reference to condition, situation, and value; to measure as laid; and many others. ‘Survey’ as a noun may mean an attentive or particular view or examination, with the design to ascertain the condition, quantity or value. Fulton v. Town of Dover, 6A, 633, 638, 6 Del. Ch. 1.
We note that the word appearing in the contract is in the plural class. It is “surveys”, not "survey”. H<mce, the parties must have intended to include all surveys relating to the contemplated construction conditions. It follows that the word “surveys” as used could reasonably have embraced an examination of conditions under as well as above the surface of the ground. As the Trial Court found as a fact that the Plaintiffs failed to make a subsoil test or tests, such finding is conclusive and supported by the evidence. Piekos v. Bachand, supra.
The Trial Court ultimately found that the complained defects were caused “by instability of the soil, the effects of frost on the soil, and the trenching exterior to the rear wall.” There is ample evidence enabling the Trial Court to so conclude. There was evidence by an expert presented by the Plaintiffs to the contrary. Regardless, the Trial Court, as the finder of fact, is free to disbelieve oral testimony, even if uncontradicted. Glazier v. Andrews, 349 Mass. 417, 419 (1965). In addition, we again state that evidence is not binding on a Trial Court simply because it is offered by an expert. Petition of the Department of Public *95 Welfare to Dispense with Consent to Adoption, 376 Mass. 252, 269 (1978); Custody of a Minor, 375 Mass. 733, 756 n. 13 (1978).
We here mention the Plaintiffs’ claim that the Defendant’s responsibility to make repairs should continue subsequent to and beyond the one year guarantee period provided in the contract of the parties. We believe that this would be true had any repair work performed by the Defendant contractor during the guarantee period been so performed in an unworkmanlike manner or by the use of defective materials. In the absence of evidence thereof, the Trial Court committed no error in disregarding the position asserted by the Plaintiffs.
We, therefore, hold that on the facts of this case as found by the Trial Court, in the light of all the circumstances prevailing, the Plaintiffs’ Requests for Rulings of Law numbered 5 and 6 plus all the other rulings based on or flowing therefrom, were correctly denied. Said Requests 5 and 6, though correct as stated by the application of the implied warranty doctrine, have been rendered harmless by the Trial Court’s findings. Petition of New Bedford Child and Family Services to Dispense With Consent to Adoption, 385 Mass. 482, 491 (1983); DiGesse v. Columbia Pontiac Co., Inc., 369 Mass. 97, 100-101 (1975). Stated another way, even if a request sets forth a correct statement of law, it is properly denied when it becomes immaterial by the Trial Court’s findings of fact. Pemberton Square Operating Co. v. Lydon, 292 Mass. 63, 66 (1935).
Concluding, the said findings of fact by the Trial Court, being supported by evidence, justified its action relating to the Plaintiffs’ Requests for Rulings of Law and the judgment it rendered for the Defendant on all counts. We so hold based either on the law of Duncan v. Cordley, supra; or, the likelihood or probability that the doctrine of implied warranty would now be held applicable to home construction contracts in this Commonwealth.
Having determined that the Trial Court did not commit error, the report be and is hereby dismissed.