**Diane TEREAULT, et al., Appellants,**

v.

**Brian G. PALMER, et al., Burnet Realty, Inc., Quality Homes, Inc., Respondents.**

**No. C1–87–936.**

Court of Appeals of Minnesota.

Oct. 13, 1987.

Review Denied Dec. 18, 1987.

Theodore J. Collins, John R. Schulz, St. Paul, for Diane Tereault, et al.

A. Keith Hanzel, St. Paul, for Brian G. Palmer, et al.

Robert Thomas Torgerson, Faegre & Benson, Minneapolis, for Burnet Realty, Inc.

Gary F. Albrecht, St. Paul, for Quality Homes, Inc.

Heard, considered and decided by POPOVICH, C.J., and NORTON and LOMMEN *, JJ.

## OPINION

NORTON, Judge.

In 1981, appellants (the Tereaults) sued respondents (the Palmers, Burnet Realty, and Quality Homes) for breach of express and implied warranty, for the sale of defective property, and for misrepresentation in the sale of a home. The district court entered summary judgment for Quality Homes on the breach of implied warranty claim, finding no such warranty could exist because the Tereaults were not in privity with Quality Homes. We affirm.

## FACTS

The facts in this case are not in dispute. In 1972, Quality Homes sold a home in their Shoreview development to the Warrens. In 1977, the Warrens sold the home to the Palmers. In 1979, the Palmers sold to appellants. The Palmers listed the home through Burnet Realty.

The soil beneath the house is of such a nature that the house has settled, and will continue to settle, unevenly. The Palmers knew the foundation had settled before they purchased the home, and they made some cosmetic repairs to cracks in the foundation. Although the Palmers apparently disclosed the problem to Burnet Realty, they decided not to inform prospective buyers unless specifically asked.

The Tereaults made two inspections of the home during the winter before they purchased the home. At that time, snow and shrubbery concealed parts of the foundation. The Tereaults noticed no cracks in the floors or walls, nor did they notice any other evidence of settling. However, they noticed some wet blocks in the basement and inquired. The Palmers told them the house had no water or leakage problems.

After the Tereaults moved in, they discovered some foundation cracks had been patched. The day they moved in, Diane Tereault was unable to operate her grandfather clock until it was adjusted to compensate for a slope in the floor. The windows were difficult to open. The basement became unusable because of dampness, a musty smell, and black mold on the basement walls. The basement leaked after rainstorms.

Many cracks, particularly a wide crack in the basement floor, have worsened since the Tereaults moved in. Cabinet doors do not stay shut, or they swing shut without being closed, according to Diane Tereault.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Some of the walls have separated from the ceiling.

After they moved in, the Tereaults learned one corner of their house had settled 5¾ inches more than the rest of the house. The Tereault's attempts to jack up the house were unsuccessful.

In 1982, Subterranean Engineering assessed the problem and told the Tereaults the house needed repairs, but that the cost of the repairs exceeds the value of the repaired home. Subterranean told appellants:

> It appears that the northeast basement corner has settled about 6 inches differentially with respect to the southwest corner. Total settlements to date were probably greater than this. It is our opinion that the soil conditions under this structure are not uniform, and that the worst condition occurs under the northeast corner of the house proper.
>
> The settlement has occurred from a failure to recognize and properly deal with the weak, compressible organic soils including organic clay, silt and peat.

Subterranean predicted continued uneven settling over twenty years, potentially another 4 to 4¾ inches. The Tereaults claim that within a year after they purchased the home, the Department of Property Taxation revised its assessed valuation of the home downward from $99,000 to $68,000.

## ISSUE

Is summary judgment proper?

## ANALYSIS

The parties agree on the material facts for purposes of this appeal. The only issue before this court is whether the trial court erred in its application of the law when it granted Quality Home's summary judgment motion on appellants' breach of implied warranty claim. *Linder v. Lund*, 352 N.W.2d 68, 70 (Minn.Ct.App.1984) (citing *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979)).

Appellants make three arguments in support of their position: (1) *Harbour v. Quality Homes, Inc.*, No. C9-83-254 (Minn. Feb. 17, 1984) an unpublished summary affirmance by the Minnesota Supreme Court, is favorably precedential to their case; (2) Minnesota should follow the trend of a minority of jurisdictions and allow subsequent purchasers to recover damages for breach of implied warranty from the builder; and (3) extending implied warranties to subsequent purchasers is consistent with Minnesota statutes and case law.

### *Harbour v. Quality Homes*

▮ Appellants claim the Minnesota Supreme Court's summary affirmance of a verdict for damages for breach of implied warranty against Quality Home, under similar circumstances, provides support for reversal in this case. We do not agree.

A summary affirmance has no precedential value. *Hoff v. Kempton*, 317 N.W.2d 361, 366 (Minn.1982). A summary affirmance is not published. Neither the facts nor the law are developed in a written opinion, and this court has no indication of the basis for the affirmance.

### *Trend in Other Jurisdictions*

▮ Minnesota allows recovery on a breach of implied warranty theory to purchasers in privity with a builder. *See, e.g., Robertson Lumber Co. v. Stephen Farmers Cooperative Elevator Co.*, 274 Minn. 17, 21–24, 143 N.W.2d 622, 625–26 (1966). Whether an implied warranty of fitness extends to a subsequent purchaser is an issue of first impression before Minnesota appellate courts. Appellants argue that the facts in this case are so compelling they justify extension of an implied warranty of fitness for use to subsequent purchasers.

▮ A majority of states recognize an implied warranty of fitness in connection with the sale of land and buildings. *See* Annot., 25 A.L.R.3d 383, 413–25 (1969). A minority of states extend the implied warranty to subsequent purchasers. *See, e.g., Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 183–84, 65 Ill.Dec. 411, 417, 441 N.E.2d 324, 330 (1982) (citing cases from Indiana, Oklahoma, and Wyoming). *Compare with Brown v. Fowler*, 279 N.W.2d 907, 910 (S.D.1979) (court refused to allow subsequent purchaser to recover for breach of

implied warranty, saying that "very few" states have recognized the warranty without privity).

We decline to extend Minnesota law on this basis.

*Consistency with Minnesota Law*

In 1977, the Minnesota legislature enacted a statute imposing certain warranties on homes built after 1977. 1977 Minn. Laws ch. 65. The act defines "owner" as any person who owns a residential building, including "any subsequent owner." Minn.Stat. § 327A.01, subd. 11 (1986). The statute requires vendors to warrant that the building will be "free from major construction defects." *Id.* § 327A.02, subd. 1(c). The statute further provides that this warranty shall survive passage of title. *Id.*, subd. 2.

Appellants concede that because their home was built in 1972, the new statute is not applicable to this case. *See* 1977 Minn. Laws ch. 65, § 9 (act effective January 1, 1978, and applicable to all contracts for sale of a dwelling signed on or after that date). They claim, however, that the statute indicates a legislative intent to extend an implied warranty of fitness to their case, consistent with the present statute.

We note the supreme court's approval of the jury verdict in *Harbour*, together with the fact that other jurisdictions have extended implied warranties to purchasers not in privity with the builder, and that the Minnesota legislature enacted chapter 327A; however, we decline to extend the law in this case. Although the legislature has acted in some degree by enacting chapter 327A, the statute as it now exists does not apply to homes built before 1978. *Id.*

The trial court suggested that the supreme court might extend chapter 327A to homes built before 1978, stating:

> It well may be that subsequently an appellate case will extend the implied warranty to such cases as this. For my part, I am reluctant to do so * * *.

The state legislature may have considered a number of reasons for not extending chapter 327A to homes built prior to 1978, such as difficulty with the statute of limitations, problems with proof, and public policy considerations. Accordingly, we believe the task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court.

**DECISION**

The district court properly granted Quality Homes' summary judgment motion.

Affirmed.