*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A13-1864**

State of Minnesota,
Respondent,

vs.

Andrew William Serres,
Appellant.

**Filed August 11, 2014**
**Affirmed**
**Larkin, Judge**

Houston County District Court
File No. 28-CR-12-584

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Jamie Hammell, Houston County Attorney, Caledonia, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

Appellant challenges the district court's denial of his motion to suppress evidence seized during the execution of a search warrant at his residence. He argues that the

search-warrant application contained information from an unlawful, warrantless garbage search and that probable cause was lacking without that information. He contends that the garbage search was unlawful under the Fourth Amendment because the warrant application did not establish that the trash was located outside of the curtilage of his residence. He further contends that even if the trash was outside of the curtilage, the search was unlawful under the Minnesota Constitution because the people of this state have a reasonable expectation of privacy in the contents of trash set out for collection by licensed garbage collectors. We conclude that the garbage search was not unlawful under either the United States or Minnesota constitutions and therefore affirm.

## FACTS

Police officers found 125 grams of marijuana and 6.7 grams of psilocybin mushrooms while executing a search warrant at appellant Andrew William Serres's residence at 108 South Fourth Street, #4, in Brownsville. Respondent State of Minnesota charged Serres with two counts of fifth-degree possession of a controlled substance. Serres moved the district court to suppress the drug evidence, in relevant part because "the search warrant application did not support probable cause because it contained information obtained from an unlawful, warrantless search of his trash."

In deciding the issue, the district court considered the application for search warrant and supporting affidavit. In the supporting affidavit, law enforcement officer Dan Coogan stated that:

> On 6/18/2012 I observed a bag of trash near the corner of S. 4th and Clay streets in the city of Brownsville. This is also where Mr. Serres lives. 6/18/2012 is a normal trash

2

collection day for the city of Brownsville and it was apparent to me that this bag of trash had been left for collection. I collected the bag and went to my processing area.

Coogan also stated that within the bag, he found a certificate of rent paid made out to "Andrew Serres of 108 4th St. #4 in Brownsville"; a plastic bag containing a small amount of "green leafy residue," which field tested positive for THC; and two unlabeled prescription-pill bottles containing white powdery residue. Coogan described 108 South Fourth Street as a "single story multi-unit dwelling," with apartments running south to north.

The district court denied Serres's motion to suppress, concluding that "the trash bag was abandoned for trash collection in an area outside the curtilage of [Serres's] apartment" and "he no longer had an expectation of privacy in the trash." Serres stipulated to the state's case pursuant to Minnesota Rule of Criminal Procedure 26.01, subdivision 4, to obtain appellate review of the district court's ruling. The district court found Serres guilty of both charges, stayed imposition of sentence, and placed Serres on probation. Serres appeals.

## DECISION

Serres argues that the district court's ruling "must be reversed because the only information supporting the court's probable cause determination for the search warrant was evidence obtained during a warrantless search of [his] trash bag." He contends that the garbage search was unlawful for two reasons. First, "the search violated the Fourth Amendment because the warrant application did not establish the bag was located outside [of] the curtilage of [his] residence." Second, "even if the bag was outside [of] the

3

curtilage and therefore not protected by the Fourth Amendment, the search violated the Minnesota Constitution because . . . the people of this state have a reasonable expectation of privacy in the contents of trash bags [that] they leave for collection by licensed garbage collectors." He contends that "[w]ithout the evidence recovered from the unlawful, warrantless search of [his] trash bag, the warrant application did not provide probable cause to believe contraband would be found on [him] or in his apartment."

We address each of Serres's arguments regarding the legality of the garbage search in turn. We review the district court's factual findings for clear error and its legal determinations de novo. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

## I.

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. amend. IV. This guarantee establishes the right to privacy "as one of the unique values of our civilization and, with few exceptions, stays the hands of the police unless they have a search warrant." *McDonald v. United States*, 335 U.S. 451, 453, 69 S. Ct. 191, 192 (1948).

Although the Fourth Amendment protects several places and things, "when it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013). And the area "immediately surrounding and associated with the home," which is referred to as curtilage, is regarded as "part of home itself for

Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 1742 (1984).

> At common law, the curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and therefore has been considered part of home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine *whether an individual reasonably may expect that an area immediately adjacent to the home will remain private*.

*Id*. (emphasis added) (quotation omitted).

However, "a resident of a multifamily residence has a diminished expectation of privacy in the common areas surrounding the residence . . . due to the fact that the common areas are not subject to the exclusive control of one tenant and are utilized by tenants generally and the numerous visitors attracted to a multiple-occupancy building." *State v. Milton*, 821 N.W.2d 789, 799 (Minn. 2012) (quotations omitted). Because there is a diminished expectation of privacy in common areas of multi-occupancy buildings, such areas are not curtilage. *Id.* at 799-800 (concluding that a shared stairway and platform at a duplex was a common area and therefore not curtilage).

Moreover, the Minnesota Supreme Court has recognized that

> it is a fair generalization that the lands adjoining a multiple-occupancy residence are less likely to receive Fourth Amendment protection than the yard of a single-family residence because the privacy expectation as to such an area is often diminished because it is not subject to the exclusive control of one tenant and is utilized by tenants generally and the numerous visitors attracted to a multiple-occupancy building.

*State v. Krech*, 403 N.W.2d 634, 637 (Minn. 1987) (quotation omitted).

As to curtilage and garbage searches, the Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection outside of the curtilage of a home. *California v. Greenwood*, 486 U.S. 35, 37, 108 S. Ct. 1625, 1627 (1988). "It is, as the United States Supreme Court points out, 'common knowledge' that plastic garbage bags left on or beside a public street are vulnerable to any number of invasions, whether from animals or members of the public." *State v. Goebel*, 654 N.W.2d 700, 703-04 (Minn. App. 2002) (quoting *Greenwood*, 486 U.S. at 40, 108 S. Ct. at 1628-29). "Therefore, the expectation of privacy in garbage adjacent to a public street is eroded." *Id*. at 704.

Under the authorities cited above, we fail to discern how the district court possibly could have concluded that the garbage bag, which was located outside of a multi-unit apartment building and near the corner of two city streets, was within protected curtilage. *See Gauster*, 752 N.W.2d at 502 ("We may independently review facts that are not in dispute, and determine, as a matter of law, whether the evidence need be suppressed." (quotation omitted)). We therefore reject Serres's argument that the information in the warrant application "make[s] it impossible to determine whether the trash bag was or was not actually located within the curtilage of [his] residence."

Serres's argument that several of the district court's findings are clearly erroneous is also unpersuasive. For example, he contends that "the finding that the bag was 'at the corner' is inconsistent with Coogan's averment that the bag was 'near' the corner." We disagree with Serres's assertion that "[t]his is a material difference." Whether the trash

bag was "at" or "near" the corner is far less significant than the undisputed fact that the bag was located outside of a multi-unit apartment building and therefore not within protected curtilage. *See Milton*, 821 N.W.2d at 799; *Krech*, 403 N.W.2d at 637. The other challenged findings are adequately supported by the application for search warrant and supporting affidavit. *See State v. Evans*, 756 N.W.2d 854, 870 (Minn. 2008) (stating that the "clearly erroneous standard requires that we be left with the definite and firm conviction that a mistake has been made," and "[i]f we find reasonable evidence to support the district court's findings of fact, we will not disturb those findings" (quotations omitted)).

In sum, the district court's factual findings are not clearly erroneous and the record supports the district court's determination that the trash bag was not located within protected curtilage. Thus, the garbage search did not violate the Fourth Amendment. *See Greenwood*, 486 U.S. at 37, 108 S. Ct. at 1627.

**II.**

Serres contends that regardless of the curtilage determination, "[i]n Minnesota, under our state constitution, citizens of this state have a reasonable expectation of privacy in the contents of trash bags placed outside [of] their residences for collection." Serres concedes that there is no reasonable expectation to privacy in garbage bags left in public areas under the Fourth Amendment. *See id.* But he asserts that "[n]o Minnesota appellate court has thoroughly considered whether an individual has, under the Minnesota Constitution, a reasonable expectation of privacy in the contents of his or her trash bags."

He asks this court to hold that under the Minnesota Constitution, there is a reasonable expectation to privacy in trash that is set out for collection.

Serres relies on appellate cases from other jurisdictions that have held, "under their respective state constitutions, that individuals have a reasonable expectation of privacy in the contents of trash and that their trash may not be seized or searched by police without a warrant issued upon probable cause." *See, e.g.*, *State v. Crane*, 254 P.3d 117, 123 (N.M. Ct. App. 2011) ("By placing his garbage in sealed, opaque bags and depositing it directly in the dumpster provided for motel guests, Defendant's actions demonstrated a reasonable expectation that those bags would remain free from warrantless law enforcement inspection at the place where the garbage is placed for customary garbage collection."), *aff'd on other grounds*, ___ P.3d ___ (N.M. June 30, 2014); *State v. Boland*, 800 P.2d 1112, 1116 (Wash. 1990) (stating that "average persons would find it reasonable to believe the garbage they place in their trash cans will be protected from warrantless governmental intrusion"). Serres argues that the "logic of these decisions is compelling," and he urges this court to "adopt it."

The state objects to our consideration of this issue, arguing that it is not properly before this court because it was not raised below.[1] *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) ("This court generally will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure."). Serres concedes that the issue was not raised below, but he asks this court to consider and determine it in the "interests of justice." *See* Minn. R. Crim. P. 28.02, subd. 11 (stating

---

[1] The state nonetheless briefed the issue on appeal.

8

that "[o]n appeal from a judgment, the court may review any order or ruling of the district court or any other matter, as the interests of justice may require").  He argues that "this court should address the Minnesota constitutional argument because this precise issue is pending in the Minnesota Supreme Court" and "[t]he interests of justice would not be served by not reviewing the issue in this case if the Minnesota Supreme Court were to ultimately conclude the citizens of this [s]tate have a reasonable expectation of privacy in their garbage." *See State v. McMurray*, A12-2266, 2013 WL 5021206, at \*3 (Minn. App. Sept. 16, 2013) (holding that "[u]nder well-established caselaw from this court, appellant had no expectation of privacy with respect to this garbage under the Minnesota Constitution"), *review granted* (Minn. Nov. 26, 2013).  Under these unique circumstances, we will review the issue in the interests of justice.  But for the reasons that follow, we decline to grant relief.

Because the language of Minn. Const. art. I, § 10, is identical to that of the Fourth Amendment of the United States Constitution, appellate courts turn to the decisions of the United States Supreme Court interpreting and applying the Fourth Amendment when determining whether police conduct constitutes an unreasonable search and seizure.  *In re Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn. 1993).  However,

> [i]t is axiomatic that a state supreme court may interpret its own state constitution to offer greater protection of individual rights than does the federal constitution.  Indeed, as the highest court of this state, [the Minnesota Supreme Court is] independently responsible for safeguarding the rights of our citizens.  State courts are, and should be, the first line of defense for individual liberties within the federalist system.  This, of course, does not mean that [the Minnesota Supreme Court] will or should cavalierly construe [the

9

Minnesota] constitution more expansively than the United States Supreme Court has construed the federal constitution. Indeed, a decision of the United States Supreme Court interpreting a comparable provision of the federal constitution that, as here, is textually identical to a provision of [the Minnesota] constitution, is of inherently persuasive, although not necessarily compelling, force.

*State v. Fuller*, 374 N.W.2d 722, 726-27 (Minn. 1985) (quotations, citations, and footnote omitted).

In *Goebel*, this court held that trash set out for routine pickup does not come under the protection of the Fourth Amendment or Minnesota's constitutional equivalent. 654 N.W.2d at 701. In so holding, we relied on the "common knowledge that plastic garbage bags left on or beside a public street are vulnerable to any number of invasions, whether from animals or members of the public. Therefore, the expectation of privacy in garbage adjacent to a public street is eroded." *Id.* at 703-04 (quotation omitted). "[A] householder may ordinarily have some expectation of privacy in the items he places in his garbage can," but "when a police officer searches trash, set on the curb for routine pickup, without trespassing on the premises, no illegal search has occurred." *Id.* at 703 (quotation omitted).

This court relied on *Goebel* in *McMurray*, where we rejected the argument that "because the Minnesota Constitution provides 'broader protections' than the federal constitution, this court should hold that [an individual] has a reasonable expectation of privacy in the contents of his garbage." *McMurray*, 2013 WL 5021206, at *2. We also relied on *McGrath*, in which this court declined to hold that "garbage searches are per se unreasonable under Minnesota law." *State v. McGrath*, 706 N.W.2d 532, 545 (Minn.

10

App. 2005), *review denied* (Minn. Feb. 22, 2005). Although *McMurray* is an unpublished decision[2] and is currently pending review by the Minnesota Supreme Court, it is based on precedential authority holding that the Minnesota Constitution does not protect against the search of garbage that has been set out for collection. *See McGrath*, 706 N.W.2d at 545 (stating that "each of the three garbage searches was conducted on garbage set out at curbside for normal pickup"); *Goebel*, 654 N.W.2d at 703 (stating that "the garbage searched was 'out on the curb at the end of the driveway'"). Here, the record establishes that the trash was found near the intersection of two city streets on "a normal trash collection day" and "it was apparent to [the seizing officer] that this bag of trash had been left for collection." On this record, the trash is not protected by the Minnesota Constitution, as it is currently construed by this court.

A decision to depart from precedent and construe the Minnesota Constitution more expansively than the federal constitution is not made "cavalierly." *See Fuller*, 374 N.W.2d at 726-27. "Further, it is not the role of *this* court to make a dramatic change in the interpretation of the Minnesota Constitution when the supreme court has not done so." *State v. Rodriguez*, 738 N.W.2d 422, 431 (Minn. App. 2007), *aff'd*, 754 N.W.2d 672 (Minn. 2008). The task of extending existing law falls to the supreme court or the legislature, and not to this court. *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987), *review denied* (Minn. Dec. 18, 1987). We therefore decline the invitation to extend Minnesota's constitutional protection against unreasonable search and seizure to

---

[2] "Unpublished opinions of the Court of Appeals are not precedential." Minn. Stat. § 480A.08, subd. 3 (2012).

garbage that has been set out for normal curbside pickup. Our decision is consistent with this court's role as an error-correcting court and the current state of Minnesota law. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) ("The function of the court of appeals is limited to identifying errors and then correcting them.").

In conclusion, Serres could not have reasonably expected that the contents of a trash bag set out for collection near the intersection of two city streets would remain private. Thus, the warrantless search of the trash bag was not unconstitutional, and the district court properly relied on information obtained from that search to determine that there was probable cause to search Serres's residence. We therefore affirm.

**Affirmed.**