MARIE C. BRASCH, FORMERLY MARIE C. PROW, v. GABRIEL J. WESOLOWSKY.
ROCHESTER BLOCK AND SUPPLY COMPANY AND OTHERS, THIRD-PARTY DEFENDANTS.

138 N. W. (2d) 619.

August 13, 1965—No. 39,586.

*Brown & Bins,* for appellant.

*E. E. Ranta, A. H. Michals,* and *Hvass, Weisman & King,* for respondent Brasch.

*Hunt, Streiff, DeVinny & Young,* for respondents Rochester Block & Supply Company and Riverside Sand & Gravel Company.

*Dingle & Krieger* and *Harold G. Krieger,* for respondent Leland Fay.

*Allen & Delaney,* for respondent Russell Brooks.

*R. V. Ehrick,* for respondent Garnet Spring.

FRANK T. GALLAGHER, C.

This is an appeal from an order of the district court denying the alternative motion of defendant, Gabriel J. Wesolowsky, for judgment notwithstanding the verdict or a new trial.

Plaintiff, Marie C. Brasch, alleged in her complaint that the defendant had been negligent in the performance of an oral agreement to construct a residential dwelling, by reason of which negligence and the unskilled manner of its construction the building's foundation settled and the walls cracked, resulting in damage to the buildings and to draperies, carpeting, furniture, and household goods. Plaintiff sought damages of $50,000. In his answer defendant denied that any damage to plaintiff was due to his negligence or unlawful conduct and alleged that any damage was due to an unavoidable accident or to the contributory negligence or unlawful conduct of plaintiff, her agents, or of persons over whom he had no con-

trol. Defendant also instituted a third-party action against several contractors who had participated in the construction of the house.[1]

It appears that plaintiff wanted to build a home patterned after a magazine picture. She contacted defendant upon the recommendation of a real estate broker who was commissioned by defendant for that purpose. Defendant examined plaintiff's lot and indicated some necessary modifications because of the size of the lot. Thereafter defendant had plans for the house prepared by a lumber company and submitted them to plaintiff. An oral agreement was entered into whereby defendant undertook to build the home for 10 percent of the estimated $29,000 cost of construction.[2]

Defendant admitted that he held himself out to plaintiff as a general contractor and that he promised, among other things, to excavate to firm soil, put in sound footings, and construct a foundation wall of sufficient strength to support the superstructure. Although it appears that defendant was a skilled carpenter, he had participated in the supervision of the construction of only a few small homes.

Defendant claims that he and plaintiff agreed on a party selected by the plaintiff to do the plumbing; that he consulted with her as to who would do the excavating and who would be the cement contractor; and that the obvious conclusion is that plaintiff did not expect him to do much of the actual construction but only to obtain other competent parties to do the various other jobs. Plaintiff contends, however, that defendant agreed, among other things, to do the excavating to firm soil, to do the block work that would be the support wall for the first and second levels of the home, and to use 24-inch footings, squared off on top, both sides, and the bottom and poured in contact with firm soil of sufficient density to support the house.

The construction of the home began in September 1960 and was completed around the first of the following April at a cost in excess of $38,000.

---

[1] Those involved in that action were Rochester Block and Supply Company, Riverside Sand and Gravel Company, Leland Fay, Russell Brooks, Garnet Spring, Rochester building inspector, and Littrup Nielson, Inc.

[2] The cost plus 10 percent included the decorating, landscaping, and carpeting, but plaintiff was to pay for those items directly as she could purchase them for less than defendant could.

The lot was located on a grade, and the surface had been somewhat leveled with fill. Defendant called in third-party defendant Riverside Sand and Gravel, Inc., to excavate trenches for the basement footings. The operator of the digging machine was told by defendant to dig down to firm soil. After the trench was dug, defendant inspected it and was satisfied that firm soil had been reached. Third-party defendant Leland Fay was hired to put footings in the trenches and this work was left largely to his discretion. Third-party defendant Russell Brooks constructed the foundation wall at defendant's request, and this work was left largely to his discretion. The building blocks were supplied by third-party defendant Rochester Block and Supply Company. Third-party defendant Littrup Nielson, Inc., was retained to excavate for and install the sewer and water pipes. Third-party defendant Garnet Spring was employed by the city of Rochester as the building inspector. Throughout the construction defendant was present from time to time and discussed the progress of the work with the respective third-party defendants other than Spring.

Sometime in May or June 1961, after the completion of the house, considerable cracking began to appear in most of the walls, including a large crack in the concrete slab of the garage floor. During the summer many of the doors got to the point where they could not be closed. When defendant undertook to repair the garage slab, he discovered that the underlying soil was saturated by water. He informed plaintiff that water seepage had caused settlement in both the garage and the house and advised her to install gutters and rainspouts, which had not been included in the construction job.

Plaintiff claims that when defendant observed how the cracks were increasing in size he told her that he didn't know what was causing them or what to do about them and indicated that she should get someone who knew what to do. In any event, another contractor examined the foundation and arranged for the performance of certain soil tests. These tests revealed that the soil upon which the foundation footings rested was of insufficient strength or, from another point of view, that the footings themselves were inadequate to support the structure in relation to the soil strength. After the soil surrounding the original foundation had been removed, it appeared that the foundation, in places, rested upon sub-

merged logs and heavy tree branches. Some of the footings were found to be rounded instead of flat; there was mortar missing from between some of the blocks; other blocks were broken, leaving intermittent gaps in the wall; and the vertical alignment of one of the foundation walls was displaced 1 to 1½ inches. There was no evidence of water seepage in the soil surrounding or supporting the foundation. It was the opinion of the experts who examined the site that any or all of the discovered defects would have caused the house to settle. Plaintiff's home was restored at a cost of over $19,000, and the reasonableness of this figure was not contested by the defendant.

At the close of the evidence, the trial court dismissed the defendant's third-party complaint with prejudice, apparently on the ground that defendant was satisfied with the materials and work of the third-party defendants (other than Spring) at the time he accepted them. However, in his memorandum attached to the order denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial, the trial judge upheld the propriety of the dismissal on the ground that the defendant had abandoned his claims during the trial. The jury returned a verdict in plaintiff's favor for $12,400.

On appeal defendant has assigned as error the trial court's failure to direct a verdict in his favor; the dismissal of his third-party complaint; the failure to instruct on contributory negligence and on the agency relationship existing between plaintiff and the third-party defendants; the impropriety of admitting in evidence, as an admission against interest, that part of defendant's third-party complaint alleging negligence on the part of the third-party defendants; and the perversity of the verdict.

■ It appears from the record that at least one of the parties involved was guilty of negligence in the construction of the home. Defendant does not seriously dispute the fact that there were some defects in the construction, but he contends that there is no evidence of his personal negligence. It is his position that he was merely the agent of plaintiff with implied authority to engage subagents to perform those services outside his general type of work. Since there was no evidence of negligence in his selection of so-called subcontractors, defendant argues that the trial court should have

directed a verdict in his favor or at least instructed the jury on the question of agency.

There are no facts apparent in the record from which the jury could have inferred an agency relationship either between plaintiff and defendant or between plaintiff and the third-party defendants. Instead, the record satisfies us that defendant held himself out as a general contractor and agreed, among other things, to construct a solid foundation. On this state of the record, the defendant's claims are controlled by Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co. 201 Minn. 500, 277 N. W. 226, where we held that a contractor owes his contractee a duty to use due care in the performance of his undertaking and that his duty is nondelegable.[3] Thus, defendant's admitted agreement bound him to respond in damages to plaintiff for unworkmanlike performance within the scope of his undertaking, notwithstanding the fact that someone else may have actually performed the work.

Defendant claims Mix v. City of Minneapolis, 219 Minn. 389, 18 N. W. (2d) 130, is controlling. We do not agree as the fact situation in that case was different. There, two actions were brought against the city of Minneapolis; Standard Construction Company, Inc.; and Percy McGowan, individually and as a construction company, by Mix as father and natural guardian of his minor son and in his own behalf. The actions were to recover for personal injuries sustained by the minor and for damages to the father's automobile. Standard was the general contractor for the enlargement of the Naval Air Station in Minneapolis under a contract with the United States Government. McGowan, a subcontractor, excavated part of a street which had been vacated by the city and delivered to the Federal Government for use as an air station. Although the bare legal title to the area involved remained in the city awaiting completion of legal steps, no right of entry thereto or control thereof remained in the city. Plaintiff's car was operated by the son on the day of the accident, and because of the absence of a barricade, he drove it over an unguarded embankment into the excavated area. We said that Standard was not liable for negligent acts and omissions of McGowan unless the right of Standard to control or

---

[3] See, Blackhawk Hotels Co. v. Bonfoey (8 Cir.) 227 F. (2d) 232; National Fire Ins. Co. v. Westgate Const. Co. (D. Del.) 227 F. Supp. 835.

supervise McGowan with respect to the time, place, or manner of performing the work existed by force of the contract between them, interpreted in the light of all the surrounding circumstances, or unless the duty to assume such control or supervision was imposed as a matter of law by reason of some peculiar relation which the person for whom the work is being performed bears to third persons. We held there was no evidence upon which a finding of negligence could be made against Standard. The difference between this case and Mix is that here defendant owes plaintiff a contractual duty of due care as a matter of law. In Mix there was no contractual relationship between the injured plaintiffs and Standard Construction Company.

■ We are not convinced that defendant has shown a prima facie case of plaintiff's contributory negligence and it was not error to refuse an instruction on this point. Defendant has merely shown that gutters and waterspouts were absent and that there was some water immediately beneath the garage slab. There is no showing that water seepage attained the depth of the foundation footings nor that it was in fact a cause of the settlement in the main structure. No water was discovered around the foundation footings after they had been cleared for examination, and plaintiff testified that she did not observe any standing water near the house.

■ Since the evidence is overwhelming that there were defects in the construction of the home within the scope of defendant's undertakings, it is unnecessary for us to consider whether it was error to permit the reading to the jury of certain parts of defendant's third-party complaint in which he alleged that any damage to the plaintiff was due to the acts of the third-party defendants in carelessly, negligently, unlawfully, and in an unworkmanlike manner performing certain services and furnishing certain materials in planning, construction, maintenance, and inspection of the premises. We cannot see how he could have been prejudiced by such reading under the record here.

■ A more substantial claim is presented by defendant's contention that the trial court should not have dismissed his third-party complaint. Defendant's argument is that he was held vicariously liable for the negligent acts of the third-party defendants and, since it is elementary that the

master may recover indemnity from his servants, it was error to dismiss the complaint. This view is inconsistent with defendant's position during the trial where he strongly maintained that he had no right to control the manner of the construction. Consequently, the record does not provide any basis for indemnity because of vicarious liability. Moreover, defendant was not sued on the basis of his vicarious liability but on the basis of his own contractual undertaking and negligent performance thereof.

The defendant seems to have maintained throughout these proceedings that the third-party defendants other than Spring had to be the agents of either plaintiff or himself, without considering their position as independent contractors. As such, in privity of contract with defendant, these third-party defendants would seem to owe the same duty to defendant that he owed to Mrs. Brasch under the authority of Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co. *supra*. And, indemnity would seem to follow even though the indemnitee's liability stems from a duty independent and distinct from that of the indemnitor.[4] Waylander-Peterson Co. v. G. N. Ry. Co. (8 Cir.) 201 F. (2d) 408, 37 A. L. R. (2d) 1399; Fidelity & Cas. Co. v. Northwestern Tel. Exch. Co. 140 Minn. 229, 167 N. W. 800; Minneapolis Mill Co. v. Wheeler, 31 Minn. 121, 16 N. W. 698.

It was unnecessary for the trial judge to consider the character of the third-party defendants' undertaking or the extent of their liability for misfeasance, since he felt that the defendant had relieved them of liability by accepting their work without complaint. It is difficult for us to hold as a matter of law that defendant released the third-party defendants from their apparent duty to perform in a workmanlike manner since throughout the trial defendant maintained that he had no right of control over them and that the very reason he engaged them was that he was not qualified to do the work himself. Whether the defendant intended to relieve them of liability should have been left to the jury.

---

[4] "* * * A joint tortfeasor may generally recover indemnity only in the following situations:

\* \* \* \* \*

"(4) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged." Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 372, 104 N. W. (2d) 843, 848.

The trial court also felt that defendant had abandoned his claims contained in the third-party complaint during the trial. On appeal, defendant has acquiesced in this ruling as to third-party defendant Nielson. We feel that the trial court must also be upheld as to third-party defendants Rochester Block and Supply Company and Garnet Spring. The record shows that there were some gaps in the foundation wall caused by missing blocks or portions of blocks. The bare fact that Rochester Block supplied the blocks, without more, is insufficient to raise an inference of negligence. With regard to Spring, little more is shown than the fact that he was building inspector at the time construction took place and that he made one inspection early in September 1960. There was no showing of the scope of his duty, that he made any further inspections, or that he received the required notice of the work progress.

The trial judge was not justified, however, in concluding that defendant withdrew his complaint against the remaining third-party defendants. The fact that defendant introduced no evidence of their negligence on his own behalf does not persuade us that he abandoned that allegation since such evidence would merely have been cumulative of what plaintiff had already shown. Defendant did show that he requested the third-party defendants to do certain aspects of the construction in return for payment, and since their relationship was oral and informal this is perhaps all he could show. But this is enough to raise an inference of a contractual relationship implied in fact from the conduct of the parties.[5]

■    The last matter of concern is the fact that the jury returned a verdict of $12,400, when the only evidence of damages that was shown was a figure of over $19,000. There is no need to consider whether the defendant was prejudiced by a compromise verdict since his liability is clear as a matter of law. The trial judge granted a new trial on the issue of damages alone as between defendant and plaintiff. His ruling is affirmed, and the matter is remanded for reconsideration of the question of damages and for a retrial of the issue of liability as between defendant and third-party

[5] See, Delyea v. Turner, 264 Minn. 169, 118 N. W. (2d) 436; Balafas v. Balafas, 263 Minn. 267, 117 N. W. (2d) 20; Roberge v. Cambridge Co-op. Creamery Co. 248 Minn. 184, 79 N. W. (2d) 142.

defendants Riverside Sand and Gravel, Inc., Leland Fay, and Russell Brooks.

Remanded.