JULIAN JOHNSON CONSTRUCTION
CORPORATION, Appellant,

v.

Edward E. PARRANTO and Valentine M.
Parranto, husband and wife, and Par-
ranto Builders, Inc., Respondents,

Heritage State Bank of North St.
Paul, Respondent.

No. C5–83–1854.

Court of Appeals of Minnesota.

Aug. 7, 1984.

Paul L. Ratelle, Barna, Guzy, Merrill,
Hynes & Giancola, Ltd., Minneapolis, for
appellant.

Roger N. Knutson, Grannis, Campbell, Farrell & Knutson, South St. Paul, for respondent Parranto.

Elizabeth J. Andrews, Briggs & Morgan, St. Paul, for respondent Heritage State Bank of North St. Paul.

Heard, considered and decided by LANSING, P.J., and FOLEY and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Plaintiff appeals from the trial court's judgment awarding damages to defendants on their counterclaim. Plaintiff claims there is insufficient evidence to support the trial court's finding that plaintiff negligently performed its excavation contract and that the trial court erred in finding defendants third party beneficiaries to plaintiff's contract with a township. We affirm.

## FACTS

*The three contracts*

On April 3, 1978 defendant Parranto Builders and White Bear Township entered a "development agreement" for a plat of land known as Halper's First Addition. White Bear Township agreed to make certain improvements including installing utilities and building roads in Halper's First Addition. In return Parranto Builders agreed to pay special assessments and to develop the plat in accordance with a development plan.

The Township then contracted with plaintiff Julian Johnson Construction Corporation for installation of the roads and other improvements in the plat. Johnson agreed to complete the improvements by June 15, 1979. The construction agreement contained a clause providing for liquidated damages of $200.00 to the township for each day that completion was delayed. The written agreement does not state an intent to benefit Parranto Builders nor does it mention the development agreement. Testimony showed, however, that plaintiff and defendant knew of the other agreements.

Much of the land in the plat was apparently swamp-like and not suitable for building foundations. In November 1978 plaintiff and defendant entered an oral agreement for excavation of the ground on numerous lots in the plat. They also agreed that plaintiff would fill in the building sites with appropriate material from other parts of the plat and then compact the soil to meet the township's 95% compaction requirement. Defendant agreed to pay plaintiff by the hour for its services and plaintiff agreed to complete the project in the spring of 1979.

*Performance of the contracts*

Plaintiff excavated, filled and compacted the lots in the two or three weeks following the oral agreement. Plaintiff's equipment operator, Marv Peters, was shown the areas to be filled and the location of the fill material by defendant's engineer Goriesky. Goriesky, Edward Parranto and Edward Parranto Jr. intermittently observed the progress of the excavation and fill in but noticed no problems at the time. Plaintiff billed defendant $26,774.30 for the work. Defendant has paid $15,000.00 of that amount.

In the spring and early summer of 1979 defendants began preparation to build foundations for homes. The township's building inspector, however, demanded soil tests before he would approve construction. Tests conducted in July 1979 indicated that 10 lots did not meet the minimum compaction requirement. After some negotiations the parties entered a settlement escrow agreement providing in part that plaintiff would recompact the ten lots.

Plaintiff did recompact the lots but with only limited success. Lots 1–3, block 3, failed further tests conducted in October 1979. Defendants later discovered lots 10, and 11, block 4 also failed the compaction tests. Goriesky testified at trial that the lots failed the test because plaintiff failed to completely excavate the lots before filling them. An inspector who viewed lots 10 and 11, block 4 after reexcavation found organic materials such as peat, hay bales,

and grass where plaintiff had excavated and filled. Such materials are not appropriate for fill. Goriesky testified that plaintiff's failure to properly excavate and fill the lots caused them to fail the compaction tests.

Plaintiff also failed to complete the road construction within the time set in the original construction contract.

The trial court found that plaintiff was negligent in completing its contract with defendants and that plaintiff breached implied warranties of fitness for a particular purpose and workmanlike construction. The trial court also found that defendants were intended third party beneficiaries of plaintiff's contract with White Bear Township.

*Damages*

The trial court awarded defendant damages for the cost of bringing lots 1–3, block 3 and lots 10 and 11, block 4 within the compaction requirement. It also awarded $800.00 to defendant to compensate for additional costs of special excavation on lot 4, block 3 and lot 9, block 4 and damages for money defendants paid a contract purchaser whose original selected site was one of those not suitable for construction.

Defendants settled with the purchaser by offering him another lot and a $1,000.00 discount on that lot. Delays due to an unsuitable construction site caused another lot purchaser to demand cancellation of his contract to purchase a lot and completed house. Defendants paid him $250.00 for release of any claims for breach of contract. The trial court awarded damages to defendants for those claims.

In addition the trial court allowed recovery of the cost of building materials damaged allegedly because plaintiff failed to complete road construction on the date set in the construction contract with the township. Defendant had brought the materials to a construction site but was unable to complete construction or even gain access to the site because heavy rains made the uncompleted road impassable.

**ISSUES**

1. Does the evidence support the trial court's finding that plaintiff negligently performed its excavation contract with defendants?

2. Were defendants intended beneficiaries of plaintiff's contract with the White Bear Township to build roads on land being developed by defendants?

**ANALYSIS**

At trial defendants advanced three theories of recovery: negligence, breach of implied warranty of workmanlike performance and breach of implied warranty of fitness for a particular purpose. The trial court based judgment for defendants on all three theories. Plaintiff argues there is insufficient evidence to support any theory of recovery. Because we find sufficient evidence was presented under the negligence theory we do not reach the questions under the other theories.

*Sufficiency of evidence*

Plaintiff argues that the record does not support the trial court's finding that plaintiff improperly performed its contract or its finding that plaintiff's improper work caused the lots to fail the compaction tests. Plaintiff claims that no direct evidence was presented showing that plaintiff was responsible for the organic materials in the lots. Plaintiff claims that the lots failed the compaction tests because of the high water table in the area or for some other cause.

Plaintiff undertakes a duty to use due care in the performance of its contract. *Brasch v. Wesolowsky*, 272 Minn. 112, 117, 138 N.W.2d 619, 623 (1965). It may be held liable for those damages proximately caused by its negligence. *Id.* Evidence of negligence and of causation may be shown by circumstantial evidence. *Lindgren v. Voge*, 260 Minn. 262, 269, 109 N.W.2d 754, 759–60 (1961).

The question whether a contractor properly performed its contract is a question of fact. *H.P. Droher & Sons v. Toushin*, 250 Minn. 490, 494, 85 N.W.2d 273, 277 (1957).

When an appellate court reviews a verdict deciding disputed questions of fact, it must view the evidence in the light most favorable to the verdict and draw every reasonable inference for the verdict. *McCree & Company v. State*, 253 Minn. 295, 305, 91 N.W.2d 713, 720 (1958).

 Defendants presented sufficient evidence to support the verdict awarding them damages under their counterclaim. Defendants' expert Goriesky testified that plaintiff improperly excavated the lots and used poor filling materials, contrary to defendants' instructions. Goriesky further testified that he believed the plaintiff's failure to properly perform its duties caused the lots to fail the compaction tests. Goriesky's testimony is bolstered by the circumstantial evidence showing that improper materials were found in the lots some time later. Although other evidence supported a different conclusion, we must view the evidence in the light most favorable to the verdict.

*Third party beneficiary claim*

Plaintiff argues that the trial court erred in finding that defendants were third party beneficiaries of plaintiff's contract with White Bear Township. Plaintiff contends that defendants were not intended beneficiaries of the contract.

Defendants may establish third party beneficiary rights by showing that the parties to the contract intended to benefit defendants at the time they entered the contract. Defendants must show that "the contract express[es] some intent by the parties to benefit the third party through contractual performance." *Cretex Companies v. Construction Leaders, Inc.*, 342 N.W.2d 135, 139 (Minn.1984); Restatement (Second) of Contracts § 302 (1979). When reviewing the contract, all circumstances surrounding the contract should be considered. *Buchman Plumbing Co. v. Regents of the University of Minnesota*, 298 Minn. 328, 334–35, 215 N.W.2d 479, 483 (1974). One circumstance considered is who receives performance. Whether the parties intended to benefit a third party is a question of fact.

At the time plaintiff and White Bear Township formed their contract White Bear Township had an obligation to complete roads in the development project area. Plaintiff knew that the area was being prepared for development. Further, defendants possessed the land at the time specified for performance. Defendants, then, were to receive performance under the contract. The absence of defendant's name in the contract and the provision for liquidated damages to White Bear Township do not preclude a finding of intent to benefit them if the circumstances show otherwise. Accordingly, the trial court had sufficient evidence to find an intent to benefit defendants.

## DECISION

Since the evidence, when viewed in the light most favorable to the verdict, supports the trial court's findings that plaintiff was negligent in excavating and filling the building sites and that defendants were the intended beneficiaries of the plaintiff's contract with the township, the trial court's decision is *affirmed*.