**THEISSEN–NONNEMACHER, INC., Respondent,**

v.

**Raj DUTT and K. Dutt, Appellants.**

**No. C1–86–246.**

Court of Appeals of Minnesota.

Sept. 23, 1986.

Ronald P. Smith, St. Paul, for respondent.

Robert L. Lowe, Minneapolis, for appellants.

Heard, considered and decided by SEDGWICK, P.J. and FORSBERG and LESLIE, JJ.

## OPINION

SEDGWICK, Judge.

Theissen-Nonnemacher, Inc. brought suit on a cost-plus 10% construction contract to recover the "reasonable value" of their work on the project. The trial court found the reasonable value was $22,499.69 in addition to the $40,000 already paid. The court also found damages for defective work in the basement of $1,500. The contractor was also found not responsible for the defective roof installed by a subcontractor. Both parties appeal. We affirm as modified.

## FACTS

Dr. Raj Dutt contacted an architect friend P.S. Vedi, the designer of his Golden Valley home, about an addition to his house. Vedi referred Dutt to Theissen-Nonnemacher, Inc. (hereinafter TNI). Vedi knew Nonnemacher from previous projects and liked him. Nonnemacher was a "very

honest person" who, on a previous project, had done a "tremendous job."

The addition encompassed a master bedroom and bathroom, and an unfinished basement. Dutt had $35,000 available for construction. TNI estimated the cost around $40,000 to $42,000. The parties orally contracted that material and labor were to be billed together with a 10% contractor's fee.

From the start there were problems with the building permit, setbacks, excavation and sewer lines, which were different from what Dutt had represented them to be. Winter complicated the construction of the foundation and pouring concrete. As a result, the foundation was poured as a monolithic slab with reinforcing rods. Drainage problems resulted from that method, which were not corrected because Dutt terminated the contract in March, 1984 due to accelerating costs.

The project involved a number of different construction changes. Walls and windows were moved about, wiring and plumbing were "roughed in" and then shifted, creating significant additional costs. Work outside the contract was undertaken on the main house at Dutt's instigation. TNI listed more than 10 items which involved the house rather than the addition.

The record shows that the changes resulted in three plans and 33 extras incorporated during the project, with a steady rise in costs from around $40,000 to $64,999.69 with the addition still incomplete.

The billings and back-up data submitted by TNI are difficult to decipher. The backup data does not always correspond to billing summaries. On the basis of the billings and testimony, the trial court found the cost plus 10% billings by TNI to represent the reasonable value of the project. The court's only deviation from the TNI charges was on the bill for hauling dirt from the site, which the court reduced from over $5,000 to $2,500.

## ISSUES

1. Are the trial court's findings as to reasonable value supported by sufficient evidence?

2. Should the respondent be held liable for the defective roof installed on the addition?

## ANALYSIS

1. The parties agree that *Malmin v. Grabner*, 282 Minn. 82, 163 N.W.2d 39 (1968), provides the appropriate measure for recovery—"The reasonable value of labor and materials furnished." *Id.* at 83, 163 N.W.2d at 40. Apparently, the parties and trial court equated a cost plus arrangement with "reasonable value." The appellant disputes only the reliability and substance of respondent's figures.

Appellant charges the evidence consists solely of summary bills with "backup" data—and the backup data does not support the summaries. The summaries indicate only that bills "were prepared and submitted to Dr. Dutt." Respondent emphasizes the changing nature of the project rather than the hard numbers to explain why the bills were so large.

Notwithstanding the contractor's poor bookkeeping and accounting practices, the court did not err in receiving the billings:

> Courts should not be captious in reception of evidence of this kind. All businessmen do not keep their books of account in the same manner. Some keep them badly. If the books kept are intended as a true record of business transactions and are made in the usual course of business, contemporaneously with the transaction of which they purport to be a record, the court should be liberal in receiving them.

*Keller Electric Co. v. Burg*, 140 Minn. 360, 362, 168 N.W. 98, 98 (1918).

Here, the five bills sent to Dutt were comprised of a summary charge for materials, labor, and included the 10% contractor fee. The bills also included a separate figure for TNI labor charges (but not Theissen's or Nonnemacher's labor). A separate sheet listing the assorted component costs and items which equaled the

summary charge accompanied each bill. Although these sheets corroborate the bill, they do not correspond to the backup data which are also attached to the bills.

■ Minnesota Rule of Evidence 803 (1984) contains the business record exception to the rule against hearsay.

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(6) Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The exception contains three requirements: the evidence was kept in the course of regularly conducted business activity, the record was made as a regular practice of that business activity, and a qualified witness provided foundation for the evidence. *National Tea Co. v. Tyler Refrigeration Co.*, 339 N.W.2d 59, 61 (Minn.1983).

■ Mark Theissen testified as to the billings. The records were made in the regular course of business, apparently on a more or less monthly business. The trial court accepted the records as reliable.

■ Bills and summary listings may be acceptable evidence even without the inclusion of underlying support. In *Herman v. Steamboat Springs Super 8 Motel*, 634 P.2d 1005, 1007 (Colo.Ct.App.1981), invoices

summarizing time sheets were admitted when verified by the company vice president who,

testified that he knew that the items of materials and labor were furnished for the project as specified in the invoices. These invoices, based on employee time sheets, were admissible as records kept in the regular course of business.

Appellant alleges that virtually all the bills are inaccurate. However, some of the itemized sheets can be reconciled with the bills. For example, bill No. 5, dated April 5, 1984 contains an apparent double charge for labor. The attached itemized sheet lists a labor charge of $911 as does the summary bill. The labor charge on the itemized sheet, consistent with TNI bookkeeping, is superfluous. If the labor charge is subtracted the numbers correctly work out to the cost plus figure. The separate labor charge is correctly included on the summary bill.

■ The plumbing bill was error. The plumbing contractor testified some fixtures were not installed and were returned for a refund of $523.79. The itemized sheet attached to the April 5, 1984 bill charges $536.40 for these fixtures to Dutt. This figure should be subtracted from the judgment.

The trial court also refused to accept a hauling charge of over $5,000. The project only involved a small addition to a house and yet 77 loads were charged to Dutt. The hauling charge was reduced to $2,500, consistent with an expert's estimate of 35 loads.

■ The trial court did not err in awarding Dutt $1,500 as the result of defective basement construction. The basement has been wet from the beginning. The sump pump does not function properly, and a crack exists in one wall. The evidence supports a finding of defective construction. An award of $1,500 was proper since it covers the estimated repairs.

2. The trial court erred in denying appellant damages of $4,000 for a defective roof. The trial court found "the plaintiff

[contractor] was not responsible for any defective condition of the roof" because the subcontractor provided a warranty for the job.

In *Brasch v. Wesolowsky*, 272 Minn. 112, 138 N.W.2d 619 (1965), the supreme court stated that:

> [A] contractor owes his contractee a duty to use due care in the performance of his undertaking and that * * * duty is non-delegable. Thus, defendant's admitted agreement bound him to respond in damages to plaintiff for unworkmanlike performance within the scope of his undertaking, notwithstanding the fact that someone else may have actually performed the work.

*Id.* at 117, 138 N.W.2d at 623. The contractee (Dutt) properly proceeded against the general contractor.

An earlier case, cited and relied on by *Brasch*, makes explicit the relationship of the various contractors when defective construction occurs:

> [T]he performance of the contract may be delegated to another, but this delegation does not relieve the contractor of the duty to act, or of his duty to act with due care. Consequently defendant is subject to liability for damage suffered by the contractee as a result of the negligence of the independent subcontractor.

*Pacific Fire Insurance Co. v. Kenny Boiler and Manufacturing Co.*, 201 Minn. 500, 503, 277 N.W. 226, 228 (1937).

## DECISION

The trial court did not err in using summary bills supported in part by backup data and in part by testimony to support a contractor's claim for the reasonable value of his services. The court erred in not subtracting $536.40 for plumbing fixtures never received by appellant. Judgment for respondent is affirmed as modified in the amount of $21,963.29. Appellant's judgment on his counterclaim is increased by $4,000 to reflect the defect in the roof, for a total of $5,500.

Affirmed as modified.