**ARDEN HILLS NORTH HOMES ASSOCIATION, on Behalf of its various members, Respondent,**

v.

**PEMTOM, INC., Appellant.**

**No. C9–91–686.**

Court of Appeals of Minnesota.

Sept. 24, 1991.

Review Granted Dec. 23, 1991.

Thomas Laughlin, Michael Cohen, Nilva & Frisch, P.A., St. Paul, for respondent.

John M. LeFevre, Jr., Robert A. Alsop, Holmes & Graven, Ch., Minneapolis, for appellant.

Considered and decided by DAVIES, P.J., and PARKER and THOREEN,* JJ.

## OPINION

PARKER, Judge.

The Arden Hills North Homes Association sued developer Pemtom, Inc., on August 14, 1985, claiming that siding prematurely deteriorated due to Pemtom's negligent construction.

Several months before trial, the trial judge told the parties he believed Minn. Stat. § 541.051, the limitations statute applicable to defects arising from improvements to real property, required the condition of the improvement to be both defective and unsafe if it were to apply. Because the association had not contended the defective siding created an unsafe condition, the court would not submit the limitations issue to the jury.

The jury found that Pemtom was entirely negligent, that the life expectancy of the siding was 26.2 years, and that the date on which prospective buyers knew or should have known of the defect was May 15, 1984.

Pemtom moved for judgment notwithstanding the verdict on grounds that the association's action was barred by Minn. Stat. § 541.051, subd. 1. In the alternative, Pemtom sought to reduce the association's damage award, arguing that subsequent buyers should not recover because they bought their townhomes when they knew or should have known of the defects. The association moved to strike the finding on notice by subsequent purchasers. It requested judgment of $396,464.64, which represented total damages of all the homeowners. The trial court refused to strike the finding and denied recovery to purchas-

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

ers who bought their homes after May 15, 1984.

On appeal Pemtom argues that the association's action is time-barred by Minn.Stat. § 541.051, subd. 1, and its negligence claim is not actionable as a matter of law.

The association filed a notice of review, challenging the trial court's refusal to allow recovery by subsequent purchasers. We affirm.

## FACTS

Pemtom, Inc., a real estate development company, constructed and sold the Arden Hills North Townhomes between 1975 and 1977. The Arden Hills North Homes Association owns the townhomes' common properties and is responsible for maintaining the siding. The individual unit owners own the siding which prematurely deteriorated.

In February 1983 the association's management company began a study to determine the reserves necessary to replace major building components. In June 1983, after some repairs were completed, the management company reported that the siding problems could not be remedied by ordinary maintenance; that they affected only appearance, however, and caused no structural problems or unsafe conditions.

In spring 1984 the association's president met with representatives of Pemtom to discuss the siding problems. The next year, the association hired an expert to determine the cause of the problems. He discovered that Pemtom had used unprimed siding on the homes, which acted as a wick to soak up water, thereby causing its deterioration. The expert concluded that the problems were due to Pemtom's poor choice of materials, insufficient attention to details, failure to prime the siding, and failure to caulk the vertical butt joints.

## ISSUES

1. Does Minn.Stat. § 541.051 require that the condition of an improvement to

real estate be both defective and unsafe before it applies?

2. Is a claim for purely economic loss damages arising from negligent construction actionable as a matter of law?

3. Did Pemtom breach a legally recognized duty of care outside its contractual duty to the association?

4. Did the trial court err by submitting to the jury a special interrogatory question sounding in assumption of the risk?

5. Did the trial court err in barring from recovery subsequent purchasers with notice?

## DISCUSSION

### I

■ Interpretation of a statute or rule is a question of law, and the reviewing court need not defer to the trial court's interpretation. *Driscoll v. Driscoll*, 414 N.W.2d 441, 445 (Minn.App.1984).

Minn.Stat. § 541.051, subd. 1 (1988),[1] reads, in part:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury, shall be brought against any person performing or furnishing the design planning, supervision, materials, or observations of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery thereof, nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction.

1. The 1988 version applies to this action. *See* Minn. Laws ch. 607, § 1 (effective April 25, 1988, to apply to matters pending on or instituted after April 25, 1988). Prior to the amendments effective in 1988, a cause of action accrued upon discovery of the defect, rather than discovery of the injury.

Pemtom challenges the trial court's interpretation that the condition of an improvement must be both defective and unsafe before Minn.Stat. § 541.051 applies. Pemtom contends this interpretation implies that the improvement must result in personal injury. According to Pemtom, "unsafe" means "free from damage." A condition should be deemed "unsafe," it argues, if it threatens to cause injury or harm to either property or person. Because the negligent construction resulted in physical deterioration of the siding, the court should have found these townhomes "unsafe" and applied Minn.Stat. § 541.051, subd. 1.

■ Pemtom agrees that both "defective" and "unsafe" are required under the statute. It argues that the damages arose from an improvement that was both defective and unsafe. Pemtom's definition of "unsafe" ("free from damage") is, we believe, already embodied in the word "defective." "Defective" and "unsafe" are clearly distinguishable words, and both must be given effect. The case of *Fiveland v. Bollig & Sons, Inc.*, 436 N.W.2d 478 (Minn. App.1989), *pet. for rev. denied* (Minn. Apr. 24, 1989), illustrates this point. There, the contractor dug a foundation but failed to erect a barricade or signs. The injured party claimed that Minn.Stat. § 541.051, subd. 1, did not bar his action brought more than two years after injury, because the excavation was unsafe but not defective. The court disagreed; the improvement was held defective as well as unsafe. *Fiveland*, 436 N.W.2d at 480. Although the court did not address the "unsafe" requirement, it clearly thought both criteria were necessary.

We take our definition of "unsafe" from *Black's Law Dictionary* (5th ed.1979). "Unsafe" means "dangerous, not secure." *Id.* at 1380. In the context of this statute, a common danger to which it refers is that threatening persons and property other than the improvement itself, as, for example, when a building might fall onto another building.

■ The trial court in this case relied on *Sherbrook Co. v. E & H Earth Movers,*

*Inc.*, 419 N.W.2d 818, 819 (Minn.App.1988), *pet. for rev. denied* (Minn. Apr. 20, 1988), for its interpretation. The *Sherbrook* court stated:

> Our Supreme Court has applied the statute only to claims involving an injury caused by a defective and unsafe condition in an improvement. *See Wittmer v. Ruegemer*, 419 N.W.2d 493 (Minn.1988) (flooding caused by defective septic system); *Frederickson v. Alton M. Johnson Co.*, 402 N.W.2d 794 (Minn.1987) (explosion caused by defective switchboard); *Bulau v. Hector Plumbing & Heating Co.*, 402 N.W.2d 528 (Minn.1987) (fire caused by defective fireplace); *Ocel v. City of Eagan*, 402 N.W.2d 531 (Minn. 1987) (flooding caused by defective sewage system); *Lovgren v. Peoples Electric Co.*, 380 N.W.2d 791 (Minn.1986) (electric shock caused by defective transformer vault); *Calder v. City of Crystal*, 318 N.W.2d 838 (Minn.1982) (flooding caused by defective drainage system); *Capitol Supply Co. v. City of St. Paul*, 316 N.W.2d 554 (Minn.1982) (flooding caused by defective sewage system); *Pacific Indemnity Co. v. Thompson–Yeager, Inc.*, 260 N.W.2d 548 (Minn.1977) (fire caused by defective furnace).
>
> The reason cases seem to arise only in tort actions would seem to be that the *unsafe* condition gives rise to the lawsuit.

*Id.*

The *Sherbrook* court held that a suit against the excavator for improperly grading the property was not governed by Minn.Stat. § 541.051. The court reasoned that the land had not been rendered unsafe and the claim was not based on an injury similar to those in the cited cases. Therefore, Minn.Stat. § 541.051 did not bar the claim for breach of contract based on improper site preparation. The claim was based solely on a defective improvement, not on injury arising from an unsafe condition. *Id.* at 819.

Pemtom claims that *Greenbrier Village Condo. Ass'n v. Keller Investment, Inc.*, 409 N.W.2d 519 (Minn.App.1987), controls this case, not *Sherbrook*. *Greenbrier* is

inapposite. In *Greenbrier* the question was whether the "defective and unsafe" language applied to claims based on defective workmanship in *the improvement itself. Greenbrier*, 409 N.W.2d at 522. The issue presented here—whether an improvement must be both defective *and* unsafe to give rise to the limitation—was not pled, raised or briefed in *Greenbrier.*

*Sherbrook* is directly on point. There, as here, nothing indicates both elements are present. We agree with the trial court that section 541.051 is not the applicable limitations statute and that the suit was timely.

## II

■ Pemtom states that the rule in other jurisdictions is that a tort action is inappropriate for recovery of economic loss damages unless there is evidence of personal injury or damage to other property. Pemtom does not contend that the sale of a townhouse constitutes a sale of goods under the UCC. It urges this court, however, to extend to construction contract litigation the doctrine found in *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981), and overruled in part by *Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn.1990) (commercial transactions for sale of goods which involve economic loss only are not recoverable in tort).

The Minnesota Supreme Court has defined "economic loss" in this context as monetary loss caused by

> the failure of the product to perform to the level expected by the buyer and commonly has been measured by the cost of repairing or replacing the product and the consequent loss of profits, or by the diminution in value of the product because it does not work for the general purposes for which it was manufactured and sold.

*Minneapolis Soc'y of Fine Arts v. Parker-Klein Assoc. Architects, Inc.*, 354 N.W.2d 816, 820–21 (Minn.1984). The deteriorated siding, therefore, constitutes economic loss, because it involves damages for the repair or replacement of defective materials.

Whether the transaction is "commercial" is a question of law. *Nelson v. Interna-tional Harvester*, 394 N.W.2d 578, 581 (Minn.App.1986). As used in the *Superwood* sense, a "commercial transaction" is one in which the court deems the transaction to be governed by the UCC. *McCarthy Well Co. v. St. Peter Creamery*, 410 N.W.2d 312, 315 (Minn.1987). The Minnesota Supreme Court has said that when the UCC does not apply, the transaction is not a "commercial transaction" and the *Superwood* rule does not apply. *Id.*

It is true Minnesota courts have treated construction contracts as commercial transactions involving the sale of goods, unless the rendition of services is the "predominant factor" in the transaction. *See Valley Farmers Elevator v. Lindsay Bros. Co.*, 398 N.W.2d 553, 556 (Minn.1987); *Holstad v. Southwestern Porcelain, Inc.*, 421 N.W.2d 371, 373 (Minn.App.1988). Nevertheless, both Pemtom and the association agree that the sale of a townhouse is not a commercial transaction under the UCC. If not a commercial transaction, the supreme court has held, the *Superwood* rule does not apply. *See McCarthy Well*, 410 N.W.2d at 315.

Economic losses have been held recoverable in negligence actions similar to this. *See Brasch v. Wesolowsky*, 272 Minn. 112, 117, 138 N.W.2d 619, 623 (1965) (owner's negligent construction action against general contractor seeking costs of repair damage due to defective workmanship allowed); *Julian Johnson Const. Corp. v. Parranto*, 352 N.W.2d 808, 811 (Minn.App.1984) (court allowed developer's counterclaim against contractor for negligent performance of contractor's excavation contract with developer, seeking recompaction costs). The trial court correctly allowed recovery of economic loss on a negligence cause of action.

## III

■ Pemtom argues that it has no duty of care independent of its contractual duty to construct the townhouses in a workmanlike manner. To prevail in negligence, it argues, one must establish a duty imposed by law, not merely one imposed by contract.

We are unpersuaded. The supreme court, in *Keiper v. Anderson*, 138 Minn. 392, 398, 400, 165 N.W. 237, 239 (1913), stated:

> There may be a breach of a contract without negligence, but there may be negligence or wrongful acts or omissions in the performance of a contract. It seems to us to make no difference whether the duty to use due care is one imposed directly by law, or exists because of the contract relation of the parties.

> \* \* \* \* \* \*

> We do not find support for the proposition of defendants' counsel that because the duty breached by defendants was one imposed by contract, this [negligence] action will not lie.

Minnesota law holds that a contractor has a duty, independent of the contract itself, to erect a building in a reasonably good and workmanlike manner. *See Brasch*, 272 Minn. at 117, 138 N.W.2d at 623 (stating that a "contractor owes his contractee a duty to use due care in the performance of his undertaking and that duty is nondelegable" and further stating that "general contractor's admitted agreement bound him to respond in damages to owner for unworkmanlike performance within the scope of his undertaking, notwithstanding the fact that someone else may have actually performed the work"); *Julian Johnson Constr.*, 352 N.W.2d at 809 (contractor undertakes to use due care in performance of his excavation contract and may be liable for damages proximately caused by negligently compacting the soil). The trial court correctly allowed the action to proceed.

## IV

At trial the jury was given a special interrogatory which required it to find the date on which a prospective purchaser knew or should have known the siding to be defective. The association challenged the submission of the interrogatory. The basis for the challenge is unknown, as the trial transcript is not part of the appellate record. Apparently, the association did not challenge jury instructions at trial.

■ In its post-trial memorandum the association, for the first time, argued that the interrogatory sounded in assumption of the risk. The association maintains that the prospective purchasers did not have the necessary knowledge to assume the risk. Further, it argues that Pemtom waived the assumption of the risk defense, since it was not pleaded as an affirmative defense, it was not presented to the jury, and the jury was not instructed on the elements of assumption of the risk. Therefore, it was inappropriate to include the defense in a special verdict question.

As an initial matter, Pemtom did not waive this defense, since it appeared in its answer. The association did not raise the assumption of risk argument at trial and did not object to instructions. Under these circumstances, we believe Minn.R.Civ.P. 49.01 is dispositive:

> If in [formulating the special verdict and instructing the jury] the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

*See also Murray v. Walter*, 269 N.W.2d 47, 50–51 (Minn.1978) (third-party plaintiff's failure to argue until post-trial motions that third-party defendants had not satisfied threshold requirements of No–Fault Automobile Insurance Act resulted in waiver of such issue).

We conclude that the trial court's submission of the special interrogatory and its failure to instruct on assumption of the risk do not require a remand.

## V

■ The association argues the court erred in barring subsequent purchasers from recovery. No Minnesota court seems to have addressed this issue, but *Jablonsky v. Klemm*, 377 N.W.2d 560 (N.D.1985), in-

volved similar circumstances. In *Jablonsky* the condominium association sued the developer, alleging that a retaining wall located behind the residential units had failed. The trial court found for the plaintiffs on theories of negligence and implied warranty, but apportioned the damages and denied recovery to those owners who had purchased their units with notice of the defective retaining wall. On appeal the supreme court rejected the plaintiff's argument that apportionment was erroneous. *Id.* at 569–70. The association argued that, as cotenants, each of them would have had a right to maintain an action for the entire amount of the damage. The *Jablonsky* court observed:

> It is, of course, permissible for a single cotenant to sue for his fraction of the damages inflicted on his fraction of ownership in a case *where the other cotenants have consented to the wrongful action by the outsider, thereby barring themselves from sharing in any recovery.*

*Id.* at 569–70 (quoting 4A Powell, *The Law of Real Property*, § 606, at 625–27 (1982)) (emphasis in original). The *Jablonsky* court found that, on a certain date, the retaining wall was in such condition that a buyer knew or should have known of the defects in the wall and that thereafter buyers were 100 percent negligent in buying and assumed all risk. The court concluded that, under the circumstances, apportioning the damages and denying recovery to those plaintiffs who purchased their units with notice of the defective retaining wall was correct. *Id.* at 570. *Accord Meadowbrook Condo v. South Burlington*, 152 Vt. 16, 565 A.2d 238, 243 (1989) (trial court erred in refusing to apportion damages; because the court found 55 percent of the condo owners purchased their units after the defects to common area became apparent, the damages awarded for the defective roads and carports must be reduced by that percentage).

*Jablonsky* and *Meadowbrook* are persuasive authority for barring the claims of subsequent purchasers with notice. The record supports the finding that by May 14, 1984, the siding was sufficiently defective to give notice to prospective purchasers. Although there is evidence in the record that some subsequent purchasers noted no defects, this testimony was submitted *after* trial.

In the absence of evidence to the contrary, the price the subsequent purchasers paid presumably reflected the existence of the patent defect. The rule of caveat emptor has applied for many years in Minnesota, particularly when the buyer could, without difficulty, discover the true value of the property. *Tretheway v. Hulett*, 52 Minn. 448, 450, 54 N.W. 486 (1893).

## DECISION

The trial court properly determined that Minn.Stat. § 541.051 did not apply, since the improvement was defective but did not create an unsafe condition. The trial court appropriately allowed recovery of purely economic loss damages on a negligent construction theory. Submission of the special interrogatory is not grounds for reversal. The trial court did not err in barring purchasers subsequent to May 15, 1984, from recovery.

Affirmed.