*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1524**

Second Chance Investments, LLC,
Appellant,

vs.

Sabri Properties, LLC, et al.,
Respondents,

Puentes Exteriors, LLC, et al.,
Defendants.

**Filed May 26, 2015
Affirmed
Peterson, Judge**

Hennepin County District Court
File No. 27-CV-10-20858

Paul A. Sortland, Sortland Law Office, PLLC, Minneapolis, Minnesota (for appellant)

Joseph F. Lulic, Hanson, Lulic & Krall, Minneapolis, Minnesota (for respondents)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Harten, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from a summary judgment, appellant argues that the district court erred in concluding that (1) appellant's breach-of-contract claims against respondents were barred by the doctrine of merger; (2) appellant's negligence claim failed because respondents owed no duty to appellant; (3) appellant could not bring a breach-of-express-warranty claim based on the sale of a home; (4) appellant's claim of breach of an implied warranty of fitness for an intended purpose failed because there was no contract between appellant and respondents; and (5) the warranty under Minn. Stat. § 327A.02, subd. 1 (2014), which protects home buyers, does not apply to this case. We affirm.

## FACTS

Respondent Sabri Properties, LLC (Sabri Properties) is a property-development, restoration, and general-construction-services business. Respondent Basim Sabri (Sabri) is the sole shareholder of Sabri Properties. Respondent Rochelle Barrett is the office manager for Sabri Properties. All three respondents were involved in the construction of a home on property that Barrett owned. Construction began in the spring of 2004 and took about a year and a half to complete. The certificate of occupancy for the home was issued on September 27, 2005.

In early September 2005, Barrett and appellant Second Chance, LLC, executed a purchase agreement for Second Chance to buy the property. By warranty deed executed September 26, 2005, Barrett, acting on behalf of herself and as attorney-in-fact for Sabri, conveyed the property to Second Chance. Second Chance is a property-development

2

business, and Terrence J. Magill, Second Chance's owner, testified in a deposition that Second Chance bought the property "to turn it for a profit."

In April 2008, the house sustained water damage from a toilet leak that caused flooding inside the house. When the water damage was being repaired, several unrelated defects were discovered, and Second Chance hired a professional engineer who worked for Advanced Consulting and Inspection (ACI), to inspect the house. ACI prepared a report that identified numerous construction defects and building-code violations that resulted in water intrusion and structural damage occurring progressively since the house was constructed. An estimate prepared by Northland Construction Group, LLC stated that it would cost $741,149.36 to repair the moisture-intrusion damage.

In November 2008, the house was nearly destroyed by fire. In January 2010, Second Chance sold the property to Hearthside Properties, LLC, and the house was later demolished. The sale agreement expressly reserved to Second Chance the right to pursue its construction-defect claims.

In June 2009, before selling the property, Second Chance brought this action against respondents alleging claims of breach of contract, negligence, breach of express warranty, breach of implied warranty of fitness for intended purpose, and breach of statutory warranty under Minn. Stat. ch. 327A.[1] The district court granted summary judgment for respondents. This appeal followed.

---

[1] Other claims asserted by Second Chance are not at issue on appeal.

3

**D E C I S I O N**

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We review the district court's grant of summary judgment de novo, to determine whether there are genuine issues of material fact and whether the district court erred in applying the law. *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 824 N.W.2d 622, 627 (Minn. 2012). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002).

**I.**

Second Chance's breach-of-contract claims against Barrett and Sabri are based on the alleged falsity of warranties and representations in the purchase agreement. "The merger doctrine generally precludes parties from asserting their rights under a purchase agreement after the deed has been executed and delivered." *Bruggeman v. Jerry's Enters., Inc.*, 591 N.W.2d 705, 708 (Minn. 1999). The merger doctrine creates a presumption of merger, which can be overcome by sufficient evidence to the contrary, such as a survival clause. *Id.* at 710. The presumption of merger does not apply to conditions subsequent. *Id.* at 711. Merger does not apply when there is fraud. *JEM Acres, LLC v. Bruno*, 764 N.W.2d 77, 83 (Minn. App. 2009).

The purchase agreement states:

> SELLER WARRANTS THAT CENTRAL AIR-CONDITIONING, HEATING, PLUMBING AND WIRING SYSTEMS USED AND LOCATED ON SAID PROPERTY

4

SHALL BE IN WORKING ORDER ON DATE OF CLOSING, EXCEPT AS NOTED IN THIS AGREEMENT. . . .

BUYER ACKNOWLEDGES THAT NO ORAL REPRESENTATIONS HAVE BEEN MADE REGARDING POSSIBLE PROBLEMS OF WATER IN BASEMENT OR DAMAGE CAUSED BY WATER OR ICE BUILDUP ON ROOF OF THE PROPERTY, AND BUYER RELIES SOLELY IN THAT REGARD ON THE FOLLOWING STATEMENT BY SELLER:

SELLER ___ HAS _X_ HAS NOT HAD A WET BASEMENT AND ___ HAS_X_ HAS NOT HAD ROOF, WALL OR CEILING DAMAGE CAUSED BY WATER OR ICE BUILDUP. BUYER ___ HAS _X_ HAS NOT RECEIVED A SELLER'S PROPERTY DISCLOSURE STATEMENT OR A SELLER'S DISCLOSURE ELECTION FORM. BUYER HAS RECEIVED THE INSPECTION REPORTS, IF REQUIRED BY MUNICIPALITY.

Second Chance argues that the merger doctrine does not apply because the warranties were not something contemplated to be performed at closing. A condition subsequent is a promise that by its nature is not performable until sometime after closing. *Bruggeman*, 591 N.W.2d at 709. But the statements made in the purchase agreement relate to the condition of the home as of and before the closing date and do not say anything about the condition of the home after closing. Therefore, the condition-subsequent exception to the merger doctrine does not apply.

Second Chance also relies on the fraud exception to the merger doctrine. An element of fraud is "a false representation by a party of a past or existing material fact." *JEM Acres*, 764 N.W.2d at 83. The evidence presented by Second Chance is insufficient to create a fact issue as to a false representation. There is no evidence that the

5

mechanical systems were not working as of the closing date. Although the ACI report identified construction defects and stated that water intrusion and structural damage had occurred progressively since construction, the house was sold to Second Chance shortly after construction was completed, and the report does not indicate that any damage from water intrusion had occurred as of the closing date. To withstand a summary-judgment motion, a party must present specific facts showing the existence of a genuine issue for trial, and speculation is insufficient. *Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 848 (Minn. 1995).

Finally, Second Chance cites a treatise stating that "[c]ovenants of warranty as to quality and improvements are collateral to the conveyance and are not merged into nor satisfied by the deed." 11 *Thompson on Real Property* § 96.11(e) (David A. Thomas ed., 2nd ed. 2002). Our supreme court, however, has declined to adopt a collateral-agreement exception to the merger doctrine. *Bruggeman*, 591 N.W.2d at 710.

The district court properly concluded that, as a matter of law, Second Chance's breach-of-contract claims were barred by merger.

## II.

A defendant in a negligence suit is entitled to summary judgment when the record reflects a complete lack of proof on any of the four essential elements of the negligence claim: (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty being the proximate cause of the injury.

*Funchess v. Cecil Newman Corp.,* 632 N.W.2d 666, 672 (Minn. 2001). The existence of a duty of care is a question of law, which this court reviews de novo. *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011).

"[A] contractor has a duty, independent of the contract itself, to erect a building in a reasonably good and workmanlike manner." *Arden Hills N. Homes Ass'n v. Pemtom, Inc.*, 475 N.W.2d 495, 500 (Minn. App. 1991), *aff'd as modified*, 505 N.W.2d 50 (Minn. 1993). The duty is owed to the contractee. *Brasch v. Wesolowsky*, 272 Minn. 112, 117, 138 N.W.2d 619, 623 (1965).

Because there was no contract between Second Chance and respondents to build the home, Second Chance is not the contractee and, as a matter of law, respondents did not owe Second Chance a duty to build the home in a reasonably good and workmanlike manner. The district court properly granted summary judgment to respondents on Second Chance's negligence claim.

### III.

To establish a breach-of-warranty claim, a plaintiff must show the existence of a warranty, a breach of that warranty agreement, and a causal connection between that breach and damages incurred. *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52-53 (Minn. 1982).

Although the basis of Second Chance's express-warranty claim is unclear, it appears to be that "Sabri represented to [Second Chance] that the house was the product of high quality workmanship and materials, and that its value was, indeed, $1.9 Million." The only evidence Second Chance cites to support this claim is exhibit one admitted

7

during Magill's deposition, which is the purchase agreement. But the purchase agreement does not warrant that the house was the product of high quality workmanship and materials or that its value was $1.9 million.

If Second Chance's claim is that Sabri made oral representations to that effect, the oral representations were superseded by the purchase agreement, which contains an integration clause that makes the written agreement the parties' complete agreement. The integration rule provides that

> where parties have reduced their contract to writing, the contract may not be proved by prior or contemporaneous utterances or writings and that these are entirely immaterial for the purpose of determining what the terms of the contract are. By making the writing the only depository and memorial of the contract, what was said during the negotiations therefor or at the time of its execution must be understood to be superseded by the writing, and so much of what was thus said as is not carried forward into the writing must be deemed to have been waived or abandoned. The rule is not one of evidence, but of substantive law – the writing is the contract, not merely the evidence thereof. Antecedent and contemporaneous utterances are excluded, not because they are lacking in evidentiary value, but because the law for substantive reasons declares that such matters shall not be shown.

*Lehman v. Stout*, 261 Minn. 384, 390, 112 N.W.2d 640, 644 (1961) (quotation omitted).

Second Chance has not identified any evidence in the record that shows that respondents expressly warranted that the house was the product of high quality workmanship and materials and that its value was $1.9 million. We note that just before exhibit one was introduced, Magill testified that he did not talk to Sabri or Barrett about

8

the property. But even if there were oral statements of warranty, under the doctrine of integration, the district court properly granted summary judgment for respondents.

## IV.

Citing *Robertson Lumber Co. v. Stephen Farmers Coop. Elevator Co.*, 274 Minn. 17, 24, 143 N.W.2d 622, 626 (1966), Second Chance argues that "Minnesota recognizes an implied warranty of fitness in the sale of land and buildings." Second Chance's argument misconstrues *Robertson Lumber*, which states:

> This we believe to be an appropriate case for extending to construction contracts the doctrine of implied warranty of fitness for the purpose, under circumstances where (1) the contractor holds himself out, expressly or by implication, as competent to undertake the contract; and the owner (2) has no particular expertise in the kind of work contemplated; (3) furnishes no plans, design, specifications, details, or blueprints; and (4) tacitly or specifically indicates his reliance on the experience and skill of the contractor, after making known to him the specific purposes for which the building is intended.

274 Minn. at 24, 143 N.W.2d at 626.

Second Chance did not have a construction contract with respondents; it had a contract to purchase real estate. And Second Chance does not explain how the four circumstances for applying the doctrine of implied warranty are met in this case where, under Second Chance's theory, respondents were both contractor and owner. The district court properly granted summary judgment for respondents on Second Chance's breach-of-implied-warranty claim.

9

## V.

Minn. Stat. § 327A.02, subd. 1 (2014), sets forth warranties that apply to a dwelling for specified periods "from and after the warranty date."

> "Warranty date" means the date from and after which the statutory warranties provided in section 327A.02 shall be effective, and is the earliest of:
> (a) the date of the initial vendee's first occupancy of the dwelling; or
> (b) the date on which the initial vendee takes legal or equitable title in the dwelling.

Minn. Stat. § 327A.01, subd. 8 (2014). "'Initial vendee' means a person who first contracts to purchase a dwelling from a vendor for the purpose of habitation and not for resale in the ordinary course of trade." *Id.*, subd. 4 (2014).

Although Second Chance was the first party to contract to purchase the home, it was not an initial vendee because it purchased the home "to turn it for a profit" and not for the purpose of habitation. Without an initial vendee, the requirements of section 327A.01, subds. 4, 8(a)-(b), could not be met, and the statutory warranty never became effective. Accordingly, the district court properly granted summary judgment for respondents on Second Chance's statutory warranty claim.

**Affirmed.**

10